2021 PA Super 95

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER BANKS | : | |
| | : | |
| Appellant | : | No. 651 MDA 2020 |

Appeal from the Judgment of Sentence Entered April 8, 2020
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0002500-2018

BEFORE: BOWES, J., DUBOW, J., and STEVENS, P.J.E.[*]

OPINION BY BOWES, J.:                                    **FILED MAY 13, 2021**

Christopher Banks appeals from the judgment of sentence of an aggregate term of six to twelve years of imprisonment imposed after he was convicted of driving under the influence ("DUI"), fleeing or attempting to elude a police officer, firearms not to be carried without a license, and three counts of recklessly endangering another person ("REAP"), as well as several summary offenses, following a bifurcated trial. We affirm.

The charges against Appellant stemmed from events in the early morning of April 27, 2018. At 2:15 a.m., Appellant, in his vehicle with two passengers, encountered the vehicle of Krystle and Jack Neary on the streets of Wilkes-Barre, Pennsylvania. Appellant tailgated the Nearys so closely that Mrs. Neary, who was driving, was unable to see Appellant's headlights in her

_____

[*] Former Justice specially assigned to the Superior Court.

rearview mirror. She took evasive action to try to lose Appellant, but he continued to follow her, driving fast and aggressively. Appellant then began firing a gun at the Nearys from his driver's window, discharging five or six shots in total. Appellant's vehicle later spun out as the parties approached railroad tracks, enabling Mrs. Neary to get a good look at Appellant and the gun in his hand. Mrs. Neary then fled, with Appellant still chasing her. The Nearys soon encountered two police vehicles, occupied by Sergeant Dale Binker and Officer Thomas Lepore. Mrs. Neary, with Appellant again behind her, stopped her vehicle in front of the officers and solicited the officers' help, yelling that someone was shooting at her.

Sergeant Binken believed that he saw a gun in Appellant's hand and directed him to drop it. Officer Lepore did not see a gun. Appellant responded by backing up his car, nearly hitting one of the officers, and speeding away. The officers pursued Appellant in what became a high-speed chase over approximately sixty miles and three counties, ending when Appellant eventually stopped four or five miles after driving over spike strips which had been placed across the highway. The officers found Appellant with slurred speech, dilated eyes, and smelling of alcohol.[1] Appellant refused to take a blood test. Appellant was arrested and his car impounded. A subsequent

---

[1] While the certified record indicates that there were two female passengers in the car with Appellant the whole time, and apparently statements were taken from them, the passengers did not testify at trial and remain unidentified.

search of the vehicle produced a bullet fragment, an empty shell casing, a handgun magazine, and markings consistent with bullet damage to the driver's door, but no firearm.

Appellant was charged with a bevy of crimes including aggravated assault, DUI, and REAP, as well as several firearm and Vehicle Code violations. Since one of the firearms charges—possession of a firearm prohibited—required proof of Appellant's prior robbery conviction, Appellant requested, and was granted, severance of that count to avoid prejudicing the jury. A trial solely on the charge of person not to possess was held on January 15, 2020.[2] In attempting to prove this charge, the Commonwealth opted to present only the testimony of the two officers, the physical evidence seized from Appellant's vehicle, and the parties' stipulation that Appellant had pled guilty to robbery, which was an enumerated offense precluding his lawful possession of a firearm. While the Commonwealth did not offer the Nearys as witnesses, both officers testified that the Nearys had claimed that someone had shot at them. However, the trial court refused to allow the hearsay to be used as substantive evidence as an excited utterance, ruling that it could only be considered to

---

[2] The case was originally scheduled for trial in March 2019, but was delayed nearly a year due to continuance requests, most of them by Appellant. Prior to trial, Appellant sought discharge pursuant to Pa.R.Crim.P. 600, but his motion was denied. Although Appellant included that denial in his Pa.R.A.P. 1925(b) statement, he has elected to abandon it on appeal.

explain the officers' course of conduct. The jury returned a verdict of not guilty.[3]

When the parties appeared for the trial of the remaining charges, Appellant moved to dismiss the counts for carrying a firearm without a license, carrying a loaded weapon, and REAP as to the Nearys. Appellant argued that, since the first jury found him not guilty of possession by person prohibited, allowing the other charges based upon Appellant's possession of a firearm to go forward could result in inconsistent verdicts. *See* N.T. Trial, 2/10-12/20, at 3. The Commonwealth responded by noting that the simple not guilty verdict in the first trial did not necessary mean that the jury found that Appellant did not possess a firearm, and that the second jury will receive evidence that the first jury did not, including the testimony of the Nearys. *Id*. at 4-5. The court asked counsel if he had any legal authority to support Appellant's dismissal motion, but he did not. *Id*. at 9. The court denied Appellant's motion. *Id*.

The following day, before trial commenced, Appellant sought reconsideration of his motion to dismiss the firearm-related charges. Appellant presented a memorandum citing collateral estoppel, rather than

---

[3] During deliberations, the jury submitted the following question: "Which door had a bullet hole; driver's side or passenger?" N.T. Trial, 1/15/20, at 138. The trial court informed the members of the jury that it could not answer, and that they were required to rely upon their individual and collective recollections. *Id*.

inconsistent verdicts, as the basis for dismissal. After entertaining argument, the trial court initially granted the motion as to the charge of carrying a firearm without a license. However, after further argument, the court ruled that the Commonwealth could proceed on that charge, but its evidence of Appellant's possession of the firearm was limited to the first part of the crime spree prior to the Nearys encountering police. *Id*. at 46.

At the conclusion of the second trial, the jury found Appellant not guilty of aggravated assault, but guilty of fleeing or attempting to elude a police officer (high-speed chase), firearms not to be carried without a license, all three counts of REAP, and DUI—general impairment (with refusal and accident resulting in vehicle or property damage). *Id*. at 321-22. Appellant then pled guilty or was convicted by the trial court of the remaining charges.

On April 8, 2020, Appellant was sentenced to an aggregate term of six to twelve years of imprisonment. Appellant filed no post-sentence motion, but filed a timely notice of appeal. The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and Appellant timely complied after being granted multiple extensions. The trial court thereafter authored a Pa.R.A.P. 1925(a) opinion, and the appeal is ready for disposition.

Appellant presents the following questions for our consideration:

A. Whether the trial court erred in denying [Appellant]'s motion to dismiss counts three, five, six, and eleven[4] of the information on the grounds of double jeopardy and collateral estoppel in that a previous jury had considered the issue of whether [Appellant] possessed a firearm and made a factual determination that he had not?

B. Whether the evidence was insufficient to convict [Appellant] of [DUI] in that:

  i. the jury found him not guilty of [DUI] while fleeing the police; and

  ii. the evidence of intoxication was only erratic driving while traveling at 130 MPH for about 60 miles on the Interstate, that Sergeant Binker smelled an odor of alcohol on [Appellant] and his pupils were dilated, he had slowed speech and he was sweating?

Appellant's brief at 4 (unnecessary capitalization omitted).

For ease of disposition, we first address Appellant's second issue challenging the sufficiency of the evidence to sustain his DUI conviction. The following principles govern our review of this claim.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth

_____

[4] Counts three, five, six, and eleven stated, respectively, charges of firearms not to be carried without a license, REAP as to Mrs. Neary, REAP as to Mr. Neary, and carrying a loaded weapon.

may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Reed*, 216 A.3d 1114, 1119 (Pa.Super. 2019) (internal quotation marks omitted).

Appellant was convicted of DUI—general impairment. The pertinent statutory provision specifies that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 Pa.C.S. § 3802(a)(1). To establish that a defendant was incapable of driving safely, "it must be shown that alcohol has substantially impaired the normal mental and physical faculties required to safely operate the vehicle." *Commonwealth v. Palmer*, 751 A.2d 223, 228 (Pa.Super. 2000). "Substantial impairment, in this context, means a diminution or enfeeblement in the ability to exercise judgment, to deliberate[,] or to react prudently to changing circumstances and conditions." *Id*. Further, we have held that "a police officer who has perceived a defendant's appearance and conduct is competent to express an opinion, in a prosecution for [DUI], as to the defendant's state of intoxication and ability to safely drive a vehicle." *Commonwealth v. Butler*, 856 A.2d 131, 137 (Pa.Super. 2004).

Appellant first suggests that a factual finding of the jury in connection with the fleeing or eluding charge renders the evidence insufficient to sustain his DUI conviction. *See* Appellant's brief at 31. By way of background, the offense of fleeing or attempting to elude a police officer is generally graded as a second-degree misdemeanor. *See* 18 Pa.C.S. § 3733(a.2)(1). However, it constitutes a third-degree felony if, while fleeing, the driver, *inter alia*, is DUI or engages in a high-speed chase that endangers law enforcement or a member of the general public. *See* 18 Pa.C.S. § 3733(a.2)(2)(i), (iii). Accordingly, on the verdict slip Appellant's jury was asked, for the fleeing or attempting to elude charge, to first indicate whether Appellant was guilty or not guilty. It was then queried, if the finding was guilty, whether the Commonwealth had proved beyond a reasonable doubt that Appellant, while fleeing, (A) committed a violation of the DUI statute, and (B) endangered law enforcement or others by engaging in a high speed chase. The jury checked "no" for A and "yes" for B.

Appellant maintains that the "no" finding for this charge impacts the sufficiency analysis of his DUI charge. *See* Appellant's brief at 31-32. However, the fact that the jury simultaneously convicted Appellant of DUI and found that Appellant was not DUI in connection with the fleeing/eluding charge is of no moment. "[I]t is well-settled that inconsistent verdicts are permissible in this Commonwealth." *Commonwealth v. Burton*, 234 A.3d 824, 829 (Pa.Super. 2020). As we have explained:

> [I]nconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal. Consistency in verdicts in criminal cases is not necessary. When an acquittal on one count in an indictment is inconsistent with a conviction on a second count, the court looks upon the acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity. Thus, this Court will not disturb guilty verdicts on the basis of apparent inconsistencies as long as there is evidence to support the verdict. The rule that inconsistent verdicts do not constitute reversible error applies even where the acquitted offense is a lesser included offense of the charge for which a defendant is found guilty.

*Commonwealth v. Barnes*, 167 A.3d 110, 120 (Pa.Super. 2017) (*en banc*) (internal quotation marks omitted).

To avoid this well-settled law, Appellant contends that he is not alleging inconsistent verdicts, asserting as follows:

> [Appellant] is not arguing inconsistent verdicts, but rather that if the jury has found as a fact that the [Appellant] was not driving under the influence of alcohol while fleeing the police, the fact of the nature of his driving during the period of flight is not a fact that can be used to establish the evidence was sufficient. Further, the observations of the police officer of the [Appellant] while out of the car of odor of alcohol, slow speech, dilated pupils and sweating do not establish he was intoxicated to such a degree that he was not capable of safe driving.

Appellant's brief at 31-32.

We are not persuaded. Appellant asserts that the jury's decision to convict him of DUI, but not to check the DUI box on the verdict slip under the fleeing count, necessarily indicates that it based his DUI conviction on evidence of his actions prior to the high-speed chase. His argument is wholly based upon the notion that the jury must have intended to render a logically consistent verdict. We instead look on this result as "no more than the jury's

- 9 -

assumption of a power which they had no right to exercise, but to which they were disposed through lenity." **Barnes**, **supra** at 120. Thus, Appellant's his first sufficiency attack is unavailing.

Appellant frames his remaining sufficiency argument as follows:

> [Appellant] submits odor of alcohol, slowed speech, dilated eyes, and sweating do not establish that he was intoxicated to an extent that rendered him incapable of safe driving. In fact, he led Officer Lepore on a high-speed chase at 130 miles per hour from Wilkes-Barre to Mount Pocono Township without striking any other vehicles or driving of[f] the road. His car was only stopped when a speed strip was laid down on the road causing him to have a flat tired [sic]. [The jury's decision not to add the enhancement of DUI while fleeing an officer indicates they believed he was not intoxicated to the point that rendered him incapable of safe driving.

> There must be a point at which the Court can, as a matter of law, find that observations of the police officer are not sufficient. Almost all cases finding sufficiency included failed field sobriety tests or some kind of confusion in fumbling for a driver's license. Those facts do not exist in this case. Even the usual "slurred" speech was described as "slowed." The symptoms of slowed speech, dilated eyes and sweating can certainly be attributed to having driv[en] at a high rate of speed of 130 miles on the interstate for sixty miles while attempting to flee the police.

> [Appellant] contends that this case falls below what should be the level of evidence required to prove DUI General Impairment and depends upon the ubiquitous "odor of alcohol.["]

Appellant's brief at 35-36.

Thus, Appellant's claim does not challenge that he was driving, or that he was driving under the influence of alcohol, but only that he had been incapable of safely driving. Appellant's argument that he managed to maintain a high speed chase for many miles without crashing demonstrated

that he had in fact been driving safely is absurd. As the trial court's summary of Appellant's driving makes plain, Appellant in his intoxicated state engaged in highly unsafe driving:

> A police officer who has perceived the way a defendant appears and acts is competent to express an opinion as to the defendant's state of intoxication and ability to safely drive a vehicle. Sergeant Binker, who is trained in the detection of impaired drivers and who has frequent contact with intoxicated people in the line of duty, testified that, based on his observations of [Appellant], he did not think that he could drive safely. In addition, there was testimony that [Appellant] followed the Nearys in a close and aggressive manner and that he sped through residential areas at speeds of over 100 miles per hour. [Appellant] drove in an erratic manner all over the roadway at speeds in excess of 130 miles per hour for over sixty miles. He tried to pass a semi-truck on the shoulder of the road, almost hitting a large interstate sign. Even after running over the spike strips that were laid down flattening his tires, [Appellant] continued to drive for three or four miles.

Trial Court Opinion, 8/25/20, at 31 (citation omitted).

We agree. Based upon their common sense and the evidence viewed in the light most favorable to the Commonwealth, the members of the jury were free to conclude that Appellant was operating his vehicle while under the influence of alcohol, and that his outrageous driving maneuvers manifested an alcohol-induced "diminution or enfeeblement in the ability to exercise judgment, to deliberate[,] or to react prudently to changing circumstances and conditions." *Palmer*, *supra* at 228. Consequently, Appellant's challenge to the sufficiency of the evidence to sustain his conviction for DUI—general impairment fails. *Accord Commonwealth v. Gruff*, 822 A.2d 773, 782 (Pa.Super. 2003) (finding evidence sufficient to establish that the defendant

exhibited a diminution of the ability to exercise judgment where he "drove at a high rate of speed, gave inappropriate answers, and refused a blood test"). Appellant's claim lacks merit.

We now address Appellant's double jeopardy issue sounding in collateral estoppel, mindful of the following legal principles. "Application of the doctrine of collateral estoppel is a question of law. Accordingly, our standard of review is *de novo*, and our scope of review is plenary." ***Commonwealth v. Brockington-Winchester***, 205 A.3d 1279, 1283 (Pa.Super. 2019) (cleaned up).

The Double Jeopardy Clauses of both the U.S. and Pennsylvania constitutions are "grounded on the concept that no person should be harassed by successive prosecutions for a single wrongful act and that no one should be punished more than once for the same offense." ***Commonwealth v. Johnson***, 231 A.3d 807, 819 (Pa. 2020). One aspect of the Double Jeopardy Clause is that it "requires a prosecutor to bring, in a single proceeding, all known charges against a defendant arising from a single criminal episode." ***Commonwealth v. Perfetto***, 207 A.3d 812, 814 (Pa. 2019) (cleaned up). However, "an accused cannot demand, or, perhaps, acquiesce in, a separation of charges then complain, when prosecution on the severed charge is imminent, that the Commonwealth is precluded from trying him on that charge because of the accused's right to have all charges against him tried

together." ***Commonwealth v. Wallace***, 602 A.2d 345, 347 (Pa.Super. 1992).

Collateral estoppel is another aspect of the rule against Double Jeopardy. As this Court explained:

> The doctrine of collateral estoppel is a part of the Fifth Amendment's guarantee against double jeopardy, which was made applicable to the states through the Fourteenth Amendment. The phrase "collateral estoppel," also known as "issue preclusion," simply means that when an issue of law, evidentiary fact, or ultimate fact has been determined by a valid and final judgment, that issue cannot be litigated again between the same parties in any future lawsuit. Collateral estoppel does not automatically bar a subsequent prosecution, but rather, it bars redetermination in a second prosecution of those issues necessarily determined between the parties in a first proceeding that has become a final judgment.

***Brockington-Winchester***, ***supra*** at 1283 (cleaned up).

Collateral estoppel "does not operate in the criminal context in the same manner in which it operates in the civil context." ***Commonwealth v. States***, 938 A.2d 1016, 1020 (Pa. 2007). In determining whether collateral estoppel applies in the criminal arena, we undertake the following inquiries:

> 1) an identification of the issues in the two actions for the purpose of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine;
>
> 2) an examination of the record of the prior case to decide whether the issue was "litigated" in the first case; and
>
> 3) an examination of the record of the prior proceeding to ascertain whether the issue was necessarily decided in the first case.

***Id***. at 1021.

Our High Court further elucidated: "If the [prior] verdict must have been based on resolution of an issue in a manner favorable to the defendant with respect to a remaining charge, the Commonwealth is precluded from attempting to relitigate that issue in an effort to resolve it in a contrary way." *Id.* at 1021. "Conversely, where an acquittal cannot be definitively interpreted as resolving an issue in favor of the defendant with respect to a remaining charge, the Commonwealth is free to commence with trial as it wishes." *Id*. Stated differently: "To say that the second trial is tantamount to a trial of the same offense as the first and thus forbidden by the Double Jeopardy Clause, we must be able to say that it would have been **irrational** for the jury in the first trial to acquit without finding in the defendant's favor on a fact essential to a conviction in the second." *Currier v. Virginia*, 138 S.Ct. 2144, 2150 (2018) (emphasis in original).

For example, in *Ashe v. Swenson*, 397 U.S. 436 (1970), six men playing poker were robbed by four masked men. Ashe and three other men were charged with, *inter alia*, six separate counts of armed robbery, one for each victim. Ashe went to trial only on one of the counts regarding a victim named Knight, at which the prosecution offered the testimony of Knight and three more of the poker players. The testimony was consistent and unchallenged as to all aspects of the crime but for Ashe's identity as one of the perpetrators. The jury found Ashe not guilty. When the trial concerning the next victim commenced, Ashe moved to dismiss based upon the prior

- 14 -

acquittal. The motion was denied, and the prosecution presented the same witnesses, who this time offered stronger identification testimony concerning Ashe as one of the robbers. This time the jury found Ashe guilty.

The High Court first concluded that an examination of the record revealed no rational basis for the jury to have concluded that there was no armed robbery or that the claimed victim had not been one of the poker players. Hence, "[t]he single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers. And the jury by its verdict found that he had not." *Id*. at 445. The Court then proceeded to hold that the second prosecution was barred, explaining as follows:

> After the first jury had acquitted [Ashe] of robbing Knight, Missouri could certainly not have brought him to trial again upon that charge. Once a jury had determined upon conflicting testimony that there was at least a reasonable doubt that [Ashe] was one of the robbers, the State could not present the same or different identification evidence in a second prosecution for the robbery of Knight in the hope that a different jury might find that evidence more convincing. The situation is constitutionally no different here, even though the second trial related to another victim of the same robbery. For the name of the victim, in the circumstances of this case, had no bearing whatever upon the issue of whether [Ashe] was one of the robbers.
>
> In this case the State in its brief has frankly conceded that following the petitioner's acquittal, it treated the first trial as no more than a dry run for the second prosecution: "No doubt the prosecutor felt the state had a provable case on the first charge and, when he lost, he did what every good attorney would do—he refined his presentation in light of the turn of events at the first trial." But this is precisely what the constitutional guarantee forbids.

*Id*. at 446–47.

In **_Commonwealth v. States_**, 938 A.2d 1016, 1017 (Pa. 2007), States was in a single vehicle collision which he survived, but two other occupants did not. States was charged with DUI, accidents involving death or personal injury while not properly licensed, homicide by vehicle, and homicide by vehicle while DUI. States sought, and was granted, severance of the first charge to avoid potential prejudice flowing from his lack of a valid driver's license. The case proceed to trial with the judge as the fact-finder as to the severed charge, and with a jury deciding the other counts. When the jury became deadlocked, the trial court both (1) found States not guilty of the charge of accidents involving death because it was not convinced that States had been the driver, and (2) declared a mistrial on the remaining charges.

States then sought dismissal of the mistrial counts on double jeopardy grounds. States appealed the denial, and this Court reversed, holding that "because the trial court explicitly found that the Commonwealth failed to prove States was driving, collateral estoppel principles precluded the Commonwealth from attempting to prove States was the driver in any subsequent proceeding." **_Id_**. at 1019. Our Supreme Court agreed, stating:

> The Commonwealth, in order to proceed on retrial, would have to present evidence on an issue that has already been decided in States' favor.
>
> . . . .
>
> [Therefore,] we hold that the Commonwealth may not retry States on the charges upon which the jury could not agree, for to do so would permit relitigation of an issue already determined, by final judgment, in States' favor.

- 16 -

*Id*. at 1027.

The U.S. Supreme Court more recently considered the collateral estoppel aspects of double jeopardy in the context of separate trials following severance in *Currier*, *supra*.[5] In that case, Currier's nephew claimed that Currier had been his accomplice in stealing a safe containing guns and cash from a residence. Currier was charged with burglary, larceny, and unlawful possession of a firearm by a convicted felon.[6] The prosecution agreed to severance of the unlawful possession charge to avoid prejudice, and the court held the burglary and larceny trial first. There, the prosecution offered the testimony of the nephew and a neighbor of the burgled residence to identify Currier. "Currier argued that the nephew lied and the neighbor was unreliable and, in the end, the jury acquitted." *Id*. at 2147.

Currier then sought dismissal of the severed firearm charge based upon double jeopardy, or at least exclusion of evidence about the burglary and larceny in the second trial. The trial court rejected Currier's arguments, the severed charge went to trial, and Currier was found guilty of unlawful possession. The Virginia appellate courts affirmed, and the U.S. Supreme

---

[5] While *Currier* is a plurality decision, the aspects of this case discussed in the body of our decision are those to which five members of the High Court subscribed.

[6] "The last charge followed in light of Mr. Currier's previous convictions for (as it happens) burglary and larceny." *Currier v. Virginia*, 138 S.Ct. 2144, 2147 (2018).

- 17 -

Court granted certiorari to resolve lower courts' "conflicting results on the double jeopardy arguments" raised by Currier. *Id*. at 2149.

Currier premised his arguments primarily on *Ashe*. The Court observed that "*Ashe*'s suggestion that the relitigation of an issue can sometimes amount to the impermissible relitigation of an offense represented a significant innovation in our jurisprudence[,]" and that "it sits uneasily with this Court's double jeopardy precedent and the Constitution's original meaning." *Id*. at 2149-50. Nonetheless, "whatever else may be said about *Ashe*, we have emphasized that its test is a demanding one. *Ashe* forbids a second trial only if to secure a conviction the prosecution must prevail on an issue the jury necessarily resolved in the defendant's favor in the first trial." *Id*. at 2150.

The Court went on to find a meaningful distinction between *Ashe* and the case before it:

> Bearing all that in mind, a critical difference immediately emerges between our case and *Ashe*. Even assuming without deciding that Mr. Currier's second trial qualified as the retrial of the same offense under *Ashe*, he consented to it. Nor does anyone doubt that trying all three charges in one trial would have prevented any possible *Ashe* complaint Mr. Currier might have had.
>
> How do these features affect the double jeopardy calculus? A precedent points the way. In *Jeffers v. United States*, 432 U.S. 137 . . . (1977), the defendant sought separate trials on each of the counts against him to reduce the possibility of prejudice. The court granted his request. After the jury convicted the defendant in the first trial of a lesser-included offense, he argued that the prosecution could not later try him for a greater offense. In any other circumstance the defendant likely would have had a good argument. Historically, courts have treated greater and lesser-included offenses as the same offense for double jeopardy

purposes, so a conviction on one normally precludes a later trial on the other. But, *Jeffers* concluded, it's different when the defendant consents to two trials where one could have done. If a single trial on multiple charges would suffice to avoid a double jeopardy complaint, there is no violation of the Double Jeopardy Clause when the defendant elects to have the offenses tried separately and persuades the trial court to honor his election.

What was true in *Jeffers*, we hold, can be no less true here. If a defendant's consent to two trials can overcome concerns lying at the historic core of the Double Jeopardy Clause, so too we think it must overcome a double jeopardy complaint under *Ashe*. Nor does anything in Jeffers suggest that the outcome should be different if the first trial yielded an acquittal rather than a conviction when a defendant consents to severance. While we acknowledge that *Ashe*'s protections apply only to trials following acquittals, as a general rule, the Double Jeopardy Clause protects against a second prosecution for the same offense after conviction as well as against a second prosecution for the same offense after acquittal. Because the Clause applies equally in both situations, consent to a second trial should in general have equal effect in both situations.

*Id*. at 2150–51 (cleaned up).

Currier argued that "he had no real choice but to seek two trials" because otherwise, knowledge of his prior convictions would taint the jury. Noting that there was no dispute that the charges could have been tried together "with appropriate cautionary instructions," the Court rejected the notion that Currier was forced "to give up one constitutional right to secure another." *Id*. at 2151. The Court explained:

Instead, Mr. Currier faced a lawful choice between two courses of action that each bore potential costs and rationally attractive benefits. It might have been a hard choice. But litigants every day face difficult decisions. Whether it's the defendant who finds himself in the shoes of Jeffers . . . and forced to choose between allowing an imperfect trial to proceed or seeking a second that promises its own risks. Or whether it's the defendant who must

- 19 -

decide between exercising his right to testify in his own defense or keeping impeachment evidence of past bad acts from the jury. This Court has held repeatedly that difficult strategic choices like these are not the same as no choice, and the Constitution does not forbid requiring a litigant to make them.

*Id*. at 2151–52 (cleaned up).

Hence, Currier's election to have two trials resulted in waiver of his *Ashe*-based double jeopardy claim, and the subsequent conviction was affirmed.[7]

_____

[7] In a portion of the opinion garnering the support of four justices, a plurality of the Currier Court indicated that collateral estoppel in the criminal context bars only retrial for the same offense, not retrial of the same fact or issue. *See Currier v. Virginia*, 138 S.Ct. 2144, 2153–54 (2018) ("[E]ven under [the *Ashe* test,] a court's ultimate focus remains on the practical identity of offenses, and the only available remedy is the traditional double jeopardy bar against the retrial of the same offense—not a bar against the relitigation of issues or evidence. Even at the outer reaches of our double jeopardy jurisprudence, then, this Court has never sought to regulate the retrial of issues or evidence in the name of the Double Jeopardy Clause."). Justice Kennedy, who joined the aspects of the decision discussed above, concurred to distance himself from the plurality's reexamination of the extent of the *Ashe* protections, stating as follows:

[W]hen a defendant's voluntary choices lead to a second prosecution he cannot later use the Double Jeopardy Clause, whether thought of as protecting against multiple trials or the relitigation of issues, to forestall that second prosecution. The extent of the Double Jeopardy Clause protections discussed and defined in *Ashe* need not be reexamined here; for, whatever the proper formulation and implementation of those rights are, they can be lost when a defendant agrees to a second prosecution. Of course, this conclusion is premised on the defendant's having a voluntary choice, and a different result might obtain if that premise were absent.

*Id*. at 2157 (Kennedy, J. concurring).

With these decisions in mind, we turn to the instant appeal. We first observe that neither the parties nor the trial court appears to have considered *Currier*, which clearly indicates that Appellant waived his *Ashe*-based double jeopardy rights by voluntarily seeking to have two trials. At the very least, Appellant has no valid claim under the federal constitution.

Our Supreme Court has held that the Pennsylvania Constitution offers broader double jeopardy protection than its federal counterpart concerning retrial following a mistrial based upon prosecutorial misconduct. *See Commonwealth v. Smith*, 615 A.2d 321, 322 (Pa. 1992). However, the Court has also held that the rights are coextensive with the federal in origin and application concerning the collateral estoppel implications of the Clauses. *See States*, *supra* at 1019 (applying *Ashe* test after indicating: "The double jeopardy protections afforded by our state constitution are coextensive with those federal in origin; essentially, both prohibit successive prosecutions and multiple punishments for the same offense.").

Neither this Court nor our Supreme Court has rendered a decision in which *Currier* is cited. However, in *Wallace*, this Court held that voluntary severance, while amounting to a waiver of having all claims decided in a single proceeding, did **not** waive collateral estoppel claims. *See Wallace*, *supra* at 349. The *Wallace* decision does not appear to be based upon the Pennsylvania Constitution, but rather applies the *Ashe* test and rejects the *Jeffers*-based analysis adopted by the *Currier* court. Thus, to the extent

that *Wallace* purported to espouse federal constitutional principles, it appears to have been overruled by *Currier*.

Our Supreme Court addressed the *Wallace* decision in *States*, a case in which the Court, as noted above, expressed the coextensiveness of the double jeopardy protections at issue. The majority noted that *Wallace* was not on point, since in *States* there was a simultaneous trial by bench and jury of all charges, rather than successive trials. *See States*, *supra* at 1023 n.8. Nonetheless, the Court went on to indicate its agreement with the principle that States's "request for severance, which operated as a specific waiver of his right to have all charges brought against him in one proceeding, cannot be converted into a general waiver of all constitutional double jeopardy rights." *Id*.

Justice Saylor filed a concurring opinion, indicating his joinder to all aspects of the majority except the majority's discussion of *Wallace*. Justice Saylor appreciated the Commonwealth's argument that States had waived his collateral estoppel double jeopardy rights by seeking severance, but ultimately was more persuaded by another state's decision "which focuse[d] on the substantial difference between the preclusive effect of a guilty plea or conviction, at issue in the seminal line of United States Supreme Court decisions, and that of an acquittal, such as is at issue here." *Id*. at 1028 (Saylor, J. concurring) (footnote omitted). The line of cases to which he

referred is that beginning with **_Jeffers_**, the one upon with the **_Currier_** majority's holding that voluntary severance results in waiver was based.

Justice Castille, joined by Justices Baer and Eakin,[8] dissented. For the very reasons offered and cases cited by the **_Currier_** majority, the dissent would have found waiver:

> As a matter of constitutional principle, neither double jeopardy nor collateral estoppel precludes a full prosecution of a matter, based upon an acquittal in a separate prosecution, where the defendant is responsible for the severance of the charges that led to separate prosecutions before separate factfinders. In such an instance, there is no governmental overreaching. By contrast, in **_Ashe_** . . . , the defendant was charged in separate criminal complaints with robbing six poker players. After a jury acquitted him of robbing one of the victims based on insufficient identification evidence, the prosecutor sought to try him for the robbery of a second poker player. Clearly, concerns of governmental overreaching are implicated in that scenario. In this case, the Commonwealth intended to try all charges against appellee in a single trial, but appellee demanded and received a separation of the proceedings. This is governmental accommodation, not governmental oppression. The windfall the Majority accords appellee furthers no constitutional value; it does, however, operate to deprive the Commonwealth of its constitutional right to a trial by jury. In this regard, the result here is perverse.

**_Id_**. at 1033 (cleaned up). **_See also id_**. at 1031-32 (citing **_Jeffers_** and its progeny).

---

[8] In addition to joining Justice Castille's dissent, Justice Eakin separately dissented to argue a similar position as that advocated by the plurality in **_Currier_** concerning the difference between collateral estoppel in the civil and criminal contexts. **_See Commonwealth v. States_**, 938 A.2d 1016, 1034 (Pa. 2007) (Eakin, J. dissenting).

Hence, given the coextensive nature of the two constitutions acknowledged by the *States* Court, and *Currier* resolving the question upon which Justice Saylor's view hinged in the opposite way, it would appear that it is now the law under both the U.S. and Pennsylvania constitutions that a criminal defendant's voluntary severance of charges results in a blanket inability to successfully invoke double jeopardy to bar the subsequent trial if he is acquitted in the first, regardless of the results of the *Ashe* test.[9] Therefore, because Appellant requested to have his person not to possess charge tried separately, his acquittal in that trial had no impact upon the Commonwealth's ability to pursue the subsequent charges in the second trial. His double jeopardy claim must fail.

We alternatively hold that, under pre-*Currier* precedent, Appellant's Pennsylvania constitutional rights were not violated by the subsequent trial on the remaining charges.[10] The trial court addressed Appellant's claim as follows:

_____

[9] We observe that this result is fully consistent with the rule discussed above permitting the fact-finder to reach inconsistent verdicts. Had Appellant not sought severance, and a single jury decided all issues, a not guilty verdict on the possession by person prohibited count would not have precluded the same jury from convicting him of the remaining charges related to gun possession. *See*, *e.g.*, *Commonwealth v. Barnes*, 167 A.3d 110, 120 (Pa.Super. 2017) (*en banc*).

[10] We address this question in the event that our Supreme Court might grant discretionary review to resolve the state constitutional issue. However, we note that Appellant has not argued that the Double Jeopardy Clause of the

The facts here are distinguishable, not only from those in *Wallace*, but from the facts found in *States* and *Ashe* as well. The charges in all three of those cases stemmed from a single incident rather than two distinct, separate episodes as exist in the instant matter. In *Wallace*, all of the offenses took place during a single incident and all of the victims were in the same car. In *States*, the charges resulted from one car accident. In addition, the trial court acquitted the defendant of the charge against him after explicitly stating that it was not convinced beyond a reasonable doubt that he was the driver of the car. The first jury as fact-finder in the instant matter did not state the basis for [Appellant]'s acquittal. Indeed, the first jury did not hear the Nearys testify to their encounter with [Appellant]. In *Ashe*, the charges resulted from one robbery of several victims that occurred at the same place and time. Further, the identification evidence presented in *Ashe* at the first trial for the robbery of one of the victims was weak. At the second trial in *Ashe*, the government presented essentially the same witnesses, although two witnesses who at the first trial had been unable to identify the defendant testified at the second trial that "his features, size and mannerisms matched those of one of their assailants." Another witness who in the first trial identified the defendant mainly by his size, at the second trial was able to recognize the "unusual sound of his voice." In the instant case, the officers were the only witnesses who testified in both trials. But for the strictures placed upon them by this court -- i.e., our hearsay ruling in the first trial forbidding consideration of statements made by the Nearys, and our ruling in the second trial that Sergeant Binker not be allowed to testify that he saw the gun -- their testimony in both the first and second trials was consistent. Unlike in *Ashe*, there were no witnesses in the second trial here that testified to additional evidence regarding the same issue that markedly differed from the testimony given in the first trial.

---

Pennsylvania constitution provides greater protection than its federal counterpart, and thus has waived the claim. *See*, *e.g.*, *Commonwealth v. Bishop*, 217 A.3d 833, 840 (Pa. 2019) ("In terms of efforts by criminal defendants to raise claims for departure from federal constitutional jurisprudence on independent state grounds, the Commonwealth is correct that the precedent of this Court [mandates] that some analysis explaining the grounds for departure is required.").

Collateral estoppel prevents re-litigation between parties of an issue where that issue has been previously decided by a competent legal forum. After a thorough review of the record here, it is apparent that the issues are not sufficiently similar for collateral estoppel to apply. Here, an issue not litigated in the first trial was to be decided in the second trial. In the first trial, it was established either that [Appellant] did not possess a gun during the time of Sergeant Binker's involvement or that there was not sufficient evidence to prove that he did. However, there was no testimony during the first trial as to what the Nearys saw prior to Sergeant Binker's involvement because this court sustained the defense objection as to hearsay and only allowed limited testimony in order to show the officer's course of conduct. Again, the first jury never heard the Nearys testify. As a result, there was no determination regarding any event that took place during the first episode when the Nearys encountered [Appellant] prior to police involvement.

As we said prior to vacating our ruling granting the motion to dismiss, "The question of whether or not the Nearys saw a gun and whether or not [Appellant] allegedly shot at them, that was not at issue. That was not litigated in the first trial." Because the verdict in the first trial did not address whether [Appellant] possessed a gun in the first episode with the Nearys, the Commonwealth was properly allowed to proceed with count three, albeit without Sergeant Binker's testimony regarding having seen the gun.

For the same reasons, the Commonwealth was also properly allowed to proceed on count eleven, carrying a loaded weapon. That statute, 18 Pa.C.S.A. §6106.1(a), provides, in pertinent part, that "no person shall carry a loaded pistol, revolver, shotgun or rifle, other than a firearm as defined in section 6102 (relating to definitions), in any vehicle." The first jury did not consider the issue as to whether [Appellant] carried a loaded weapon during the first episode with the Nearys.

Counts five and six, one count each of REAP, allege that [Appellant] recklessly engaged in conduct which placed or may have placed another, namely, Krystle Neary and Jack Neary, respectively, in danger of death or serious bodily injury. These counts involve victims, evidence and testimony that was not presented and was thus not considered in the first trial and proof of additional elements that do not hinge on whether [Appellant]

- 26 -

possessed a firearm as relayed by Sergeant Binker. Moreover, neither count five nor count six is necessarily dependent on the fact that [Appellant] was in possession of a firearm. Evidence proving that [Appellant] drove under the influence of alcohol at excessive speeds while aggressively following the victims (Nearys) supports the convictions for REAP. *See*, *Commonwealth v. Sullivan*, 864 A.2d 1246 (Pa. Super. 2004) (Defendant's actions while driving intoxicated when accompanied by other tangible indicia of unsafe driving supported convictions for REAP).

Because under the *Ashe* test the acquittal in the first trial also cannot be definitively interpreted as resolving an issue in favor of [Appellant] with respect to the charges for REAP at the second trial, [Appellant]'s motion with regard to counts five and six was also properly denied.

Trial Court Opinion, 8/25/20, at 23-25 (some citations omitted).

We fully agree with the trial court's assessment. Contrary to Appellant's assertion that the first jury "considered the issue of whether [Appellant] possessed a gun and was shooting at the Nearys," the first jury heard no substantive evidence of, and thus could not render a factual determination about, whether Appellant possessed a gun during his encounter with the Nearys prior to their encountering the police. The only witnesses to testify at the first trial were Sergeant Binker and Officer Lepore. They testified, respectively, that they were approached by a car whose occupants exclaimed that "they were being shot at" or "somebody is shooting at me." N.T. Trial, 1/15/20, at 34, 76. Appellant objected to both statements, and the trial court both times indicated that the evidence was not admitted for its truth, but to explain the officers' course of conduct. *Id*. at 25, 76-77.

Regarding any weapon possession or use prior to the officers' involvement, the first jury heard only that someone in the other car, not necessarily Appellant, had been shooting at them, and thus the officers intervened. The remaining evidence concerned only subsequent events personally witnessed by the officers. Specifically, Sergeant Binker testified that he then exited his vehicle and saw Appellant with a handgun in his hand. *Id*. at 35. Officer Lepore testified that he heard Sergeant Binker say "drop the weapon, show me your hands," but he did not himself see Appellant holding a firearm. *Id*. at 77-18. The jury heard no substantive evidence of the earlier events of the evening, nor any evidence identifying Appellant as the vehicle's shooter. Hence, the jury's not guilty verdict only **necessarily** found that Appellant did not possess a firearm at the time of the police encounter or thereafter, not that the Nearys were not fired upon by Appellant before they happened upon the police.

In *Ashe*, *States*, and *Wallace*, all relied upon by Appellant, the incident and timeframe at issue in the second trial completely overlapped with those at issue in the first trial. Here, the evidence in the first trial concerned a mere portion of the episode, and the Commonwealth sought to litigate the remaining charges in the second trial by reference to completely separate

portions of the overall incident.[11]  As a result, the issue decided in Appellant's favor in the first trial—that he did not possess a firearm during his encounter with the police officers—would not have to be resolved in a contrary way for the Commonwealth to prevail in the second trial.  The issue resolved in the first trial was omitted entirely from the case in the litigation of the remaining charges.  It would not be irrational for a jury to find that Appellant no longer possessed a gun when the police saw him, but that he had possessed one earlier when he pursued and fired at the Nearys.  Accordingly, Appellant's collateral estoppel claim fails.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/13/2021

---

[11]  To the extent that Appellant contends that the occurrences of April 27, 2018 amounted to a single criminal episode, and the Commonwealth could have expanded the litigation of the severed claim by offering the testimony of the Nearys to bolster the evidence of possession, his argument implicates not collateral estoppel, but the requirement that the Commonwealth litigate the entirety of a single criminal episode in one proceeding.  ***See Commonwealth v. Perfetto***, 207 A.3d 812, 814 (Pa. 2019).  However, as noted above, even under ***Wallace***, Appellant waived that aspect of his double jeopardy rights by seeking severance of the charges.  ***See Commonwealth v. Wallace***, 602 A.2d 345, 347 (Pa.Super. 1992).