J-A01014-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
BRADFORD JEREMY COLE :
:
Appellant : No. 1080 EDA 2025

Appeal from the Judgment of Sentence Entered November 19, 2024
In the Court of Common Pleas of Monroe County Criminal Division at
No(s):  CP-45-CR-0000587-2024

BEFORE:  DUBOW, J., KUNSELMAN, J., and SULLIVAN, J.

MEMORANDUM BY DUBOW, J.: **FILED MARCH 16, 2026**

Appellant, Bradford Jeremy Cole, appeals from the November 19, 2024 judgment of sentence entered in the Monroe County Court of Common Pleas following his conviction for Attempted Burglary and related charges.  Appellant challenges the sufficiency of evidence supporting his convictions.  After careful review, we affirm the judgment of sentence imposed for Attempted Burglary, Stalking-Repeated Acts, and Stalking-Repeated Communications, but reverse the conviction for Attempted Criminal Trespass by Break-in.[1]  We need not remand for sentencing because Appellant did not receive a separate sentence for Attempted Criminal Trespass by Break-in.

---

[1] 18 Pa.C.S. §§ 901(a) (Attempt for Burglary of Overnight Accommodations, Person Present, 3502(a)(1)(ii)); 2709.1(a)(1), (2); and 901(a) (Attempt for Criminal Trespass by Break-in, 3503(a)(1)(ii)), respectively.

This case involves an incident in Pocono Summit on March 16, 2024, when Appellant and his estranged wife, Nikole Locascio ("Victim") had pending divorce proceedings. At trial, Victim provided the following recitation of relevant events.

Victim testified that she had obtained a protection from abuse order ("PFA"), effective from September 22, 2023, to September 22, 2026, which prohibited Appellant from contacting her or coming to her residence. N.T. Trial, 9/24/24, at 42-43. She confirmed that Appellant was aware of the order. *Id.* at 43. Victim did not testify to the events that led to the PFA or any past violations of the PFA.[2]

Victim recounted that, at approximately 9:30 AM on March 16, 2024, she was preparing to go to sleep after returning to her single-family home after working an overnight shift. She reported hearing "a banging on the front door" and saw Appellant "standing in and looking in the window of the [front] door[.]" *Id.* at 45. She heard him "tr[y] to open the screen door[,]" but he could not open it as it was locked. *Id.* at 46. She stated that the interior front door was also locked. She could hear him talking but "wasn't sure what he was saying." *Id.* Victim called 911 after seeing him at the front door.

While on the phone with emergency services, Victim "heard him at the kitchen door on the side. Same thing, banging on the door and talking." *Id.*

---

[2] The court admitted the PFA as an exhibit at trial, which is attached to the trial transcript. In seeking to admit the PFA, the Commonwealth agreed to limit testimony to the existence of the PFA and not "go into the details of the PFA because that's not relevant to this case." N.T. Voir Dire, 9/17/24, at 60.

- 2 -

at 47. She did not testify regarding whether Appellant tried to open the side door, but she stated that it was also locked. He left before she hung up with 911. *Id.* at 48.]

During Victim's testimony, the Commonwealth played two videos taken from surveillance cameras at each door, and Victim identified Appellant as the person in the videos.[3] Victim testified that she was "scared" when she saw Appellant looking into her house and continued to be scared on the day of trial. *Id.* at 51.

Responding Pocono Mountain Police Officer Carmine Saprona testified to discovering Appellant in the woods, within a "[f]ive-to-ten-minute walk" from Victim's home, which was in a heavily wooded area. *Id.* at 59. The officer described finding Appellant "[k]ind of slouched laying against a pine tree" and stated that Appellant complied with officers' verbal commands as they took him into custody. *Id.* at 58. The officer recounted that Appellant's vehicle had been found in a Lowe's store parking lot approximately one half of a mile through the woods from Victim's house.

Police Officer Daniel Murgia, who had responded to Victim's home within a few minutes of her 911 call, described Victim as "[v]ery scared" and "in

---

[3] The first video of the front door is 41 seconds long and shows Appellant, who is carrying a bag, approach the front door, grab the handle of the screen door, knock on the door, and stand very close to the door, apparently peering into the windows before walking to the side of the house. The second video spans approximately 19 seconds and shows him walking up to the side door, leaning toward the door, and then leaving after spending approximately 5 seconds in front of the side door. Both videos are grainy and without sound.

distress" when he arrived. *Id.* at 64. Officer Murgia stated that he subsequently reviewed the contents of Appellant's drawstring bag, which the officers searched incident to his arrest. The bag contained keys to Appellant's vehicle, approximately six cell phones, and "several recording devices," including a handheld camcorder. *Id.* at 65. Based upon his training, Officer Murgia testified that recording devices could be used to "stalk an individual and keep track of somebody." *Id*.[4]

On September 24, 2024, the jury found Appellant guilty of Attempted Burglary, Attempted Criminal Trespass, Stalking–Repeated Acts, and Stalking–Repeated Communications.[5]

On November 19, 2025, the court sentenced Appellant to 26 to 76 months for Attempted Burglary and a consecutive sentence of 10 to 20 months for Stalking–Repeated Acts, for an aggregate sentence of 36 to 96 months. The court found that Attempted Criminal Trespass merged with Attempted Burglary and that Stalking-Repeated Communication merged with Stalking-Repeated Acts for purposes of sentencing.

On December 2, 2024, Appellant filed post-sentence motions challenging the sufficiency of the evidence for each of his convictions.

_____

[4] The Commonwealth additionally presented an employee of the Monroe County Control Center, who testified to documentation of Victim's 911 call, as the recording was no longer available. In relevant part, he stated that the documentation indicated that at 9:37:06 "Caller's husband [was] banging on her front door." *Id.* at 74. The defense did not present any witnesses.

[5] Prior to the jury's deliberations, the court dismissed several other charges.

- 4 -

Following a February 25, 2025 hearing, the trial court denied the post-sentence motions in an order and opinion on March 25, 2025.

On April 21, 2025, Appellant filed a notice of appeal. Appellant and the trial court complied with Pa.R.A.P. 1925, with the court relying upon its March 25, 2025 opinion.

Appellant raises the following questions on appeal:

1. Whether, for Attempted Burglary, there was insufficient evidence of an intent to commit a crime therein where the only evidence presented was the Appellant knocking on [the] door and checking to see if the screen door is open in order to knock on an interior door?

2. Whether, for Attempted Criminal Trespass, there was insufficient evidence of an intent to break-in where the only evidence was the Appellant knocking on the door and checking to see if the screen door is open so as to knock on an interior door and then going around to check on a second door on the property before leaving?

3. Whether, for the Stalking offenses, there was insufficient evidence of a course of conduct or repeated acts or communications to place another in reasonable fear of bodily injury where the only evidence was the Appellant knocking on a door and checking to see if the screen door is open so as to knock on an interior door and then going around to check on a second door on the property before leaving?

Appellant's Br. at 6.

A challenge to the sufficiency of the evidence presents a question of law, for which "our standard of review is *de novo*[,] and our scope of review is plenary." ***Commonwealth v. Brooker***, 103 A.3d 325, 330 (Pa. Super. 2014) (citation omitted). We review claims regarding the sufficiency of the evidence by considering whether, "viewing all the evidence admitted at trial in the light

- 5 -

most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Melvin***, 103 A.3d 1, 39 (Pa. Super. 2014) (citation omitted). The Commonwealth may sustain this burden of proof "by means of wholly circumstantial evidence." ***Commonwealth v. Banks***, 253 A.3d 768, 774 (Pa. Super. 2021) (citation omitted). The factfinder, "while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." ***Id.*** (citation omitted). An appellate court "may not re-weigh the evidence and substitute our judgment for that of the factfinder." ***Commonwealth v. Torsunov***, 345 A.3d 339, 346 (Pa. Super. 2025) (citation omitted). Rather, we will affirm the factfinder "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Banks***, 253 A.3d at 774 (citation omitted).

Appellant's first two convictions involve the crime of attempt. The Crimes Code instructs that "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a).

## A. Attempted Burglary

Appellant first challenges his conviction for Attempted Burglary. The General Assembly has defined Burglary in relevant part as follows: "A person commits the offense of burglary if, with the intent to commit a crime therein, the person . . . enters a building or occupied structure . . . that is adapted for

overnight accommodations in which at the time of the offense any person is present[.]" 18 Pa.C.S. § 3502(a)(1)(ii). Appellant challenges the element of "intent to commit a crime therein." Appellant's Br. at 18-39.

Regarding this element, the Supreme Court clarified that the Commonwealth does not have to prove that the defendant intended to commit a specific crime; rather, the Commonwealth need only demonstrate the defendant's "intent to commit a crime, **any crime**, after entry." ***Commonwealth v. Alston***, 651 A.2d 1092, 1094 n.3 (Pa. 1994) (emphasis in original); ***see also Commonwealth v. Brown***, 886 A.2d 256, 260 (Pa. Super. 2005). Moreover, the Supreme Court opined that, when the appellant "has entered the private residence by criminal means[,] we can infer that [the a]ppellant intended a criminal purpose based upon the totality of the circumstances." ***Alston***, 651 A.2d at 1095. The Court explained that "[a] conclusion to the contrary would place the police and citizens of this Commonwealth in the dangerous position of having to permit a burglar to take a substantial step towards the commission of a particular crime, potentially risking violence, in order to secure a conviction for burglary." ***Id.***[6]

As stated, Appellant argues that the evidence is insufficient to demonstrate that that he possessed an intent to commit a "crime therein,"

_____

[6] "When the Commonwealth does specify, in the information or indictment, the crime defendant intended to commit, the Commonwealth must prove the requisite intent for that particular crime in order to prove a burglary or attempted burglary." ***Brown***, 886 A.2d at 260. The information in this case did not specify the "crime therein[;]" thus, the Commonwealth was not required to prove a specific criminal intent. Am. Information, filed 9/16/24.

rejecting the trial court's conclusion that the evidence demonstrated his criminal intent to violate the PFA. Appellant's Br. at 18-32; Trial Ct. Op., 3/25/25, at 6-8. Appellant asserts that a PFA violation constitutes an indirect criminal contempt rather than a "crime" as defined by Section 107 of the Crimes Code. Appellant's Br. at 20-32 (citing 18 Pa.C.S. § 107). We conclude that this argument warrants no relief under *Alston* and *Brown* because the Commonwealth did not need to prove an intent to commit a specific crime, rather it merely needed to demonstrate criminal intent.

Appellant also contests whether the Commonwealth demonstrated a criminal intent based on the totality of the circumstances. Appellant's Br. at 32-39. Appellant contends that the evidence showed that he "did not enter the home without permission, did not take anything from anyone, and engaged in no illegal conduct whatsoever subsequent to his 'banging' on the door." *Id.* at 36-37. Appellant emphasizes that he did not have any weapons on him at the time of arrest and minimizes his alleged "flight" as "simply leaving the scene" and resting in the woods. *Id.* at 37-38.

Viewing the evidence in a light most favorable to the Commonwealth as verdict winner, we reject Appellant's claim. Rather, we agree with the trial court that the jury had sufficient evidence to infer Appellant's criminal intent based on the totality of the circumstances, including Appellant's approaching Victim's house through the woods despite knowing of the PFA, attempting to gain entry to the home and communicate with Victim, while holding a bag of equipment that the officer testified could be used for stalking, and then fleeing

- 8 -

the scene and hiding in the woods. Trial Ct. Op. at 7-8. As we refuse to reweigh the evidence and substitute our judgment for the jury, we reject Appellant's challenge to the sufficiency of the evidence for Attempted Burglary.

## B. Attempted Criminal Trespass

Appellant next challenges the sufficiency of the evidence supporting his conviction for Attempted Criminal Trespass by Break in. Appellant's Br. at 39-43. Criminal Trespass by Break-in, graded as a second-degree felony, occurs, in relevant part, when a person "knowing that he is not licensed or privileged to do so . . . breaks into any building or occupied structure[.]" 18 Pa.C.S. § 3503(a)(1)(ii); (a)(2). The statute defines "[b]reaks into" as "[t]o gain entry by force, breaking, intimidation, unauthorized opening of locks, or through an opening not designed for human access." *Id.* at § 3503(a)(3). In contrast, Criminal Trespass, graded as a third-degree felony, occurs when a person "knowing that he is not licensed or privileged to do so . . . enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure[.]" *Id.* at § 3503(a)(1)(i); (a)(2).

Appellant contends that the Commonwealth failed to prove the "break-in" element, relying upon the analysis in ***Commonwealth v. Cook***, 547 A.2d 406, 411 (Pa. Super. 1988). Appellant's Br. at 39-42. In ***Cook***, this Court distinguished Criminal Trespass, graded as a third-degree felony, from Criminal Trespass by Break-in, graded as a second-degree felony, emphasizing that Criminal Trespass by Break-in required some amount of

force to open a door or pick open a lock. 547 A.2d at 411. We concluded that Cook's unauthorized entry to a store's stockroom through a door with an unlocked padlock was insufficient to demonstrate a break-in, explaining that "[i]f all unauthorized entries through an unlocked door were to be equated with 'breaking into' a building or separate portion thereof, there would have been no need for the legislature to create a lesser crime for entries made without the use of force to break in." *Id.*; *see also Commonwealth v. Reed*, 216 A.3d 1114, 1121 (Pa. Super. 2019) (applying *Cook*).

Upon careful review of the record, we agree with Appellant that the Commonwealth failed to present evidence that Appellant intended to or that he took a substantial step toward breaking into Victim's house by "gain[ing] entry by force, breaking, intimidation, unauthorized opening of locks, or through an opening not designed for human access." 18 Pa.C.S. § 3503(a)(3). Instead, the videos and Victim's testimony demonstrate that Appellant merely attempted to open the front screen door before knocking on the screen door and then knocking on the side door and apparently peering through windows. Even viewing the evidence in a light most favorable to the Commonwealth, there is no evidence that Appellant used any force to enter the house or that he attempted to pick the lock. While Victim testified that she heard him speaking, she could not hear what he said to establish an attempt to gain entry through intimidation.

Additionally, while not raised by Appellant, we observe that the trial court did not instruct the jury on the "break-in" element, instead instructing the jury in relevant part as follows:

> To find [Appellant] guilty of criminal trespass you would have to find that all the following elements have been proven beyond a reasonable doubt: First, that he entered [Victim's] home; second, that he knew he didn't have permission or lawful authority to be in the home; and third, that the home was an occupied structure.

N.T. Trial at 111. In light of this instruction, we cannot presume that the jury made a finding of fact that Appellant attempted to "break into" Victim's home.[7]

Accordingly, we reverse Appellant's conviction for Criminal Trespass by Break-in. We observe, however, that reversal of this conviction does not alter Appellant's sentence as this count merged with Attempted Burglary for sentencing.

### C. Stalking

Finally, Appellant challenges his convictions for Stalking-Repeated Acts and Stalking–Repeated Communications. Appellant's Br. at 43-50. The Crimes Code defines Stalking as occurring when a person either:

> (1) engages in a course of conduct or repeatedly commits acts toward another person, including following the person without proper authority, under circumstances which demonstrate either

---

[7] The trial court appears to have conflated the elements of Criminal Trespass by Break-in with Criminal Trespass as a third-degree felony, as the court found the evidence sufficient to establish that Appellant attempted "to gain entry to the house by **subterfuge** because he was not invited in and he knew he was not permitted on the property by court order[,]" without addressing the "break-in" element. Trial Ct. Op. at 9 (emphasis added); *see* 18 Pa.C.S. § 3503(a)(1)(i) (providing the elements of Criminal Trespass, graded as a third-degree felony, as including "gain[ing] entry by subterfuge").

an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person; or

(2) engages in a course of conduct or repeatedly communicates to another person under circumstances which demonstrate or communicate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person.

18 Pa.C.S. § 2709.1(a).

For both convictions, Appellant challenges the element of "course of conduct," which the Code defines, in relevant part, as "[a] pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct." *Id.* at § 2709.1(f). Stated differently, a course of conduct "requires a showing of a repetitive pattern of behavior, which the Commonwealth establishes by proving at least two related but separate events." *Commonwealth v. Cruz*, 348 A.3d 1199, 1213 (Pa. Super. 2025) (citation and internal quotation marks omitted), petition for allowance of appeal filed, 729 MAL 2025.

In *Cruz*, this Court addressed a claim similar to that raised by Appellant, where Cruz argued that "his actions constituted a single, continuous incident rather than multiple, distinct events" necessary to prove a "course of conduct" for purposes of Stalking. *Id.* We found that the following constituted "multiple, separate acts" necessary to prove a "course of conduct[,]" even though Cruz never left the victim's property:

[The victim] testified that after Cruz forcibly entered her home and she struck him with a bat, he refused to leave the property, instead circling her residence and peering through her kitchen

- 12 -

window while she was on the phone with 911. He also gestured
in a manner that [she] interpreted to mean that he would kill her.

*Id.* at 1214. This analysis is consistent with the plain language of the statute providing that a "course of conduct" can be established by "more than one act over a period of time, **however short**[.]" 18 Pa.C.S. § 2709.1(f) (emphasis added).

Appellant argues that the Commonwealth failed to prove that he engaged in a "course of conduct" for either acts or communications based upon Appellant's conduct which spanned less than one minute and involved him knocking on two doors. Appellant's Br. at 48-50. Appellant relies upon the decision in *Commonwealth v. Leach*, 729 A.2d 608, 611 (Pa. Super. 1999). Appellant's Br. at 44-50. In that case, Leach "vandalized the victim's vehicle on nine separate occasions, flattening 13 tires and smashing 3 windshields." *Leach*, 729 A.2d at 610. Appellant highlights that Leach was convicted of nine separate counts of stalking, one for each of nine separate "occasions," but not separately for each individual tire slashed or windshield broken.[8] Appellant's Br. at 49.

Appellant asserts that "course of conduct" requires "distinct temporal events, not multiple actions within the same event." *Id.* at 46. Appellant argues that his knocking on two doors in less than one minute should be viewed as a single event. He warns that, under the trial court's logic, each

---

[8] There is no indication that the Commonwealth in *Leach* sought convictions based on individual tires and windshields, nor did this Court address that argument.

individual knock on a door could involve separate counts of stalking, which he notes "would be clearly unreasonable." ***Id.*** at 50.

We conclude that Appellant's argument fails in light of this Court's recent decision in ***Cruz***. We agree with the trial court that the Commonwealth presented sufficient evidence to demonstrate a course of conduct necessary to prove Stalking-Repeated Acts based upon Appellant "coming on the property, attempting to get in the front of the house and then going to the side of the house and trying again." Trial Ct. Op. at 10.[9, 10]

Similarly, Appellant's speaking at both doors established Stalking-Repeated Communications. We conclude that the jury had sufficient evidence to conclude that Appellant's speaking constituted repeated communications to Victim, which demonstrated his intent to cause, and in fact caused, Victim substantial emotional distress, regardless of whether she could understand the individual words spoken.

_____

[9] Indeed, the Commonwealth could have charged each event in the course of conduct as a separate charge of Stalking, which in this case would be the two separate doors. ***See Leach***, 729 A.2d at 612 (concluding that "[e]ach stalking, including the first, is a certifiable count, capable of sustaining a separate conviction and sentence").

[10] We reject the Commonwealth's argument that Appellant's "previous instances of unwanted communications culminating in a protection from abuse order and a finding of contempt" can be used to establish a "course of conduct." Commonwealth's Br. at 25-26. Rather, while the alleged prior acts appear in the complaint, the Commonwealth did not present evidence of those acts to the jury. Complaint, Aff. of Probable Cause, filed 3/16/24; N.T. Trial at 84 (documenting trial court's decision to dismiss Harassment charge based upon absence of "evidence of prior PFA violation").

After careful review, we affirm the judgment of sentences imposed for Attempted Burglary, Stalking-Repeated Acts, and Stalking-Repeated Communications, but reverse the judgment of sentence for Attempted Criminal Trespass. As Appellant did not receive a separate sentence for Attempted Criminal Trespass, our reversal of that conviction does not disturb the overall sentence, and we need not remand for resentencing.

Judgment of sentence affirmed as to Attempted Burglary, Stalking-Repeated Acts, and Stalking-Repeated Communications. Judgment of sentence reversed as to Attempted Criminal Trespass-Breaking-in.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/16/2026