J-S23039-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT BRUSCHI | : | |
| | : | |
| Appellant | : | No. 2297 EDA 2023 |

Appeal from the Judgment of Sentence Entered August 4, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0001260-2023

BEFORE:   STABILE, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED DECEMBER 16, 2024**

Appellant, Robert Bruschi, appeals from the judgment of sentence imposed following his conviction of driving under the influence ("DUI")—general impairment.[1]  We affirm.

The trial court accurately summarized the factual background to this case based on the testimony at trial:

> On January 8, 2023, Officer Mathew Shannon was making a left onto Mill Creek Road in Falls Township, Bucks County when he observed a black Mercedes to the right of him in the cross-traffic lane accelerating at a high rate of speed towards a red light at the intersection.  As the vehicle approached the intersection, Officer Shannon jerked his car to the right, believing that he may have to avoid a possible collision with the approaching vehicle.  The Mercedes abruptly stopped, slamming on its brakes just ahead of the intersection.  After completing his turn out of the intersection,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802(a)(1).

Officer Shannon then made a U-turn and proceeded to follow the car to observe other driving behaviors. When Officer Shannon. caught up with the Mercedes, he observed the vehicle weaving into another lane of traffic as its passenger side tires made contact with the white-dashed lines that separated the two lanes. Officer Shannon made note that, based off his seven years of experience conducting traffic stops, this could have been an indication of impaired driving.

Officer Shannon subsequently observed the vehicle approach an intersection with a green light that quickly switched to a yellow signal. Instead of slowing down, the vehicle accelerated towards the intersection. As the Mercedes approached the intersection, the light had turned red. The Mercedes continued to speed up and go through the steady red signal. Officer Shannon saw this as another indication that the driver may be intoxicated. After observing the vehicle go through the red light, Officer Shannon observed the Mercedes accelerate "at a very high rate of speed." Officer Shannon then safely and slowly traveled though the red-light intersection and then had to accelerate to up to 70 miles-per-hour in order to catch up to the vehicle. The road on which the vehicle was driving had a speed limit of 35 miles-per-hour. Officer Shannon testified that with the coefficient of friction on the clear roadway, the vehicle would have had sufficient time to slow down before the intersection if it had been going 35 miles-per[-]hour.

After traveling at a high rate of speed to catch up with the Mercedes, Officer Shannon observed the vehicle change lanes without using its turn signal. Officer Shannon took this as another sign of impaired driving. Officer Shannon then pulled over the vehicle on Mill Creek Road in Bristol Township, PA. There, Officer Shannon made contact with the Appellant[]. Officer Shannon testified that the Appellant had bloodshot, glassy eyes and spoke with a "thick tongued" accent, indicative of intoxication. Officer Shannon also smelled an odor of alcohol from Appellant's person. During the traffic stop, Officer Shannon asked Appellant if he had been drinking, to which Appellant replied that he had two beers. Officer Shannon also observed a six-pack of unopened beer in the passenger seat of Appellant's Mercedes. When asked where he was coming from, Appellant said he was coming from New Jersey, however that was not consistent with Officer Shannon's observations based on the direction that Appellant was driving on Mill Creek Road.

Officer Shannon then believed Appellant was possibly under the influence of alcohol and began to conduct field sobriety tests while Appellant was still seated in his vehicle. Officer Shannon asked Appellant to recite the alphabet from E to R. Appellant failed to do this properly, refusing to look at Officer Shannon and speaking very softly. Appellant started at the letter A and ended at the letter L. Officer Shannon then asked Appellant to perform a finger dexterity test, where the subject must touch the tip of their thumb to the tip of each finger and count along with each tap in descending and ascending order twice. Appellant failed the finger dexterity test, failing to touch the tip of his fingers to the tip of his thumb, instead touching beneath the tips of his fingers.

After these failed tests, Officer Shannon asked Appellant to exit the vehicle. At this point, based on his erratic driving behaviors, bloodshot eyes, thick-tongued speech, and failure to perform both field sobriety tests, Officer Shannon believed Appellant was possibly intoxicated.

As Appellant exited the vehicle, he was unsteady on his feet, taking small steps to catch his balance. Officer Shannon again noticed an odor of alcohol stemming from Appellant as he exited. Officer Shannon then explained to Appellant that he was going to conduct additional field sobriety tests. In response, Appellant became argumentative with Officer Shannon and refused to undergo any additional field sobriety tests, saying that his epilepsy affected him from doing anything at that point.

Following this exchange, Officer Shannon determined that Appellant was under the influence to a degree which rendered him incapable of safely driving a motor vehicle and placed him under arrest for driving under the influence. Appellant was placed in the back seat of Officer Shannon's patrol SUV and transported [] back to the police station.

At the police station, Officer Shannon read Appellant a DL-26 form word for word. Appellant became annoyed and told Officer Shannon that he did not want to undergo a blood draw but would undergo a breath test. Officer Shannon explained to Appellant that a breath test was unavailable and only a blood test would be available to determine his blood alcohol content. Appellant again refused to undergo a blood test and remained silent. Appellant also refused to sign the DL-26 form and indicate that he refused a blood test. At this point Officer Shannon determined that Appellant was refusing the blood test. Officer Shannon then

- 3 -

completed the form and sent it to PennDOT for processing. During this interaction at the police station, Appellant continued to emit an odor of alcohol. After processing, Officer Shannon drove Appellant to a friend's house in Bristol, PA.

Trial Court Opinion, 10/31/23, at 1-5 (footnotes omitted).

Appellant was charged with DUI—general impairment, and he proceeded to a one-day bench trial held on July 6, 2023, at the conclusion of which he was found guilty of the above-stated offense. The trial court sentenced Appellant on August 4, 2023, to a six-month term of restrictive probation with the first seven days in total confinement and the following ten days in home confinement with electronic monitoring. Appellant then filed this timely appeal.[2]

Appellant raises the following issues for our review:

1. Did the trial court err[] in [overruling] the objection on pages 26 through 28 of the Notes of Testimony [] from July 6, 2023 trial by judge allowing the police officer to answer whether [he] would have enough time to stop doing 75 mph in 35 feet as the officer [] was not qualified to do so [and] he did not have the requisite expert testimony or basis otherwise to make the conclusion and it was beyond a proper lay opinion?

2. Did the trial court err in [overruling] the objection on pages 40 through 41 of the Notes of Testimony [] from July 6, 2023 waiver trial allowing the police officer to testify about the medical condition of epilepsy, epilepsy's effect on drivers and on [Appellant] specifically as the officer was not qualified to do so and he did not have the requisite expert testimony or basis otherwise to make the conclusion(s)?

_____

[2] After being granted an extension of time, Appellant filed his Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal on October 16, 2023, and the trial court filed a responsive Pa.R.A.P. 1925(a) opinion on October 31, 2023.

3. Was the evidence at trial, in the light most favorable to the verdict-winner, so insufficient to prove . . . that while operating the vehicle, [Appellant] was under the influence of alcohol to such a degree as to render him incapable of safe driving on January 8, 2023 in Falls Township?

Appellant's Brief at 2-4 (trial court disposition and suggested answers omitted).

Appellant first argues that "Officer Shannon was never offered as an expert and he did not qualify as one, hypothetically[,] but nevertheless he was permitted to offer testimony and opinion based upon specialized and technical knowledge about [Appellant] and his hypothetical ability to stop while driving in front of the officer on the night in question, January 8, 2023." Appellant's Brief at 11. Appellant notes that while "Officer Shannon's testimony did illustrate his training and background, [] it provided a baseless and improper nexus between said training and certain conclusions from Officer Shannon that [Appellant] was incapable of safely controlling an automobile and that he could or could not stop [his vehicle]." *Id.* at 13. Appellant contends that Officer Shannon's testimony was not "proper lay opinion under [Pennsylvania Rule of Evidence] 701" and further that the trial court abused its discretion by "retroactively [finding] Officer Shannon to be an expert" on the subject under Rule 702. *Id.* at 13, 23-24.

Decisions concerning the admissibility of evidence are within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. *Commonwealth v. Vance*, 316 A.3d 183, 189 (Pa. Super. 2024). "An abuse of discretion is the overriding or

misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will, or partiality, as shown by the evidence of record." *Id.* (citation, brackets, and quotation marks omitted).

Rules of Evidence 701 and 702 govern, respectively, the admission of lay and expert opinion testimony. Rule 701 permits a lay witness to offer opinion testimony if the opinion is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Pa.R.E. 701. Under Rule 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
> >
> > (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
> >
> > (c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

"[T]he standard for qualifying as an expert is a liberal one and the witness need only have any reasonable pretension to specialized knowledge on the subject matter under investigation and the weight to be given to the

expert's testimony is for the factfinder." ***Commonwealth v. Jones***, 240 A.3d 881, 890 (Pa. 2020) (internal quotation marks and citation omitted). "It is the job of the trial court to assess the expert's testimony to determine whether the expert's testimony reflects the application of expertise or strays into matters of common knowledge." ***Commonwealth v. Yocolano***, 169 A.3d 47, 60 (Pa. Super. 2017) (quoting ***Nobles v. Staples, Inc.***, 150 A.3d 110, 114 (Pa. Super. 2016)).

The testimony in question concerns Officer Shannon's observation of Appellant accelerating through a red light at the intersection of Levittown Parkway and Mill Creek Road. With the benefit of the motor vehicle recording ("MVR") captured from his vehicle, which was played at trial, Officer Shannon explained that Appellant was not yet at the beginning of the left-turn lane for Levittown Parkway—and thus at least 75 yards from the intersection—when the traffic control signal turned yellow. N.T., 7/6/23, at 25-26; Commonwealth Exhibit 1 (MVR video). The prosecutor then asked whether, consistent with the thirty-five mile-per-hour speed limit, Appellant would have "sufficient time to stop for the traffic control device[.]" N.T., 7/6/23, at 26. Appellant's counsel objected, and the trial court sustained the objection. ***Id.***

After the objection was sustained, the prosecutor inquired of Officer Shannon's training in accident reconstruction, including his knowledge of "stopping time for sober versus an intoxicated individual" and "skid to stop formulas" concerning how quickly a vehicle can stop. ***Id.*** at 26-27. The prosecutor then asked Officer Shannon whether, on a clear and dry roadway,

as was present on the date of the incident, seventy-five yards would be sufficient distance to stop when traveling at thirty-five miles per hour. *Id.* at 27. Defense counsel objected again, but the trial court overruled the objection on this occasion. *Id.* Officer Shannon then responded: "With the coefficient of friction on the roadway, roadways like these, it's generally about .6 to .8, and the vehicle [] would have sufficient time to slow down there doing the speed limit of 35 miles-an-hour." *Id.*

While the Commonwealth did not explicitly offer Officer Shannon as an expert in accident reconstruction or vehicle stopping times and the trial court did not qualify the officer as such, it is clear from the record that the Commonwealth engaged in voir dire of the officer's qualifications and the trial court tacitly accepted Officer Shannon as an expert when it overruled Appellant's second objection. The trial court explained as much in its Pa.R.A.P. 1925(a) opinion:

> Officer Shannon's testimony revealed that he had sufficient training in accident reconstruction, spending a total of four weeks studying the subject. He adequately described what that training entailed. He testified that he reviewed data that he had been made aware of during the trial, namely in the dashcam video before him. At this moment, Officer Shannon became qualified as an expert witness. Th[e trial c]ourt properly determined that accident reconstruction was so related to science, requiring expert qualification. That is exactly why th[e c]ourt sustained an objection from Appellant's counsel when the Commonwealth asked Officer Shannon a question regarding stopping times and distances before the Commonwealth laid a foundation which qualified Officer Shannon to give an answer. After the Commonwealth had laid a foundation properly qualifying Officer Shannon as an expert in accident reconstruction, th[e c]ourt properly determined his testimony would aid the finder of fact,

namely, to the issue of whether [] Appellant was speeding. As such, th[e c]ourt was in its discretion to hear Officer Shannon's testimony regarding whether the vehicle would have enough time to slow down ahead of the red-light intersection.

Trial Court Opinion, 10/31/23, at 9-10 (footnotes omitted); *see* N.T., 7/6/23, at 26-27.

Upon review, we do not find that the trial court abused its discretion in concluding that Officer Shannon demonstrated a "reasonable pretension to specialized knowledge on the subject matter under investigation." *Jones*, 240 A.3d at 890 (citation omitted). As illustrated by the trial court, Officer Shannon had four weeks of training in accident reconstruction, which included knowledge of stopping distances based upon the condition of the roadway and the sobriety of the vehicle operator, and he reviewed the MVR from his vehicle to assist him in assessing whether Appellant's vehicle could have safely stopped at the intersection in question. Trial Court Opinion, 10/31/23, at 9-10; N.T., 7/6/23, at 26-27; *see also* Pa.R.E. 703 (stating that an expert "may base an opinion on facts or data in the case that the expert has been made aware of or personally observed"). Appellant's argument that Officer Shannon did not meet the "liberal standard" for qualification of an expert, *Jones*, 240 A.3d at 890 (citation omitted), is based on nothing more than a bald assertion that there was "a baseless and improper nexus between [Officer Shannon's] training and certain conclusions." Appellant's Brief at 13.

The fact that Officer Shannon was never explicitly offered or qualified as an expert does not affect our conclusion that the trial court acted properly.

The rules governing expert and lay testimony "do not preclude a single witness from testifying, or offering opinions, in the capacity as both a lay and expert witness on matters that may embrace the ultimate issues to be decided by the fact-finder." *Jones*, 240 A.3d at 890 (quoting *Commonwealth v. Huggins*, 68 A.3d 962, 967 (Pa. Super. 2013)). Generally, certain safeguards must be taken in such cases, including the provision of cautionary jury instructions and ensuring that the lay and expert testimony is carefully delineated. *Jones*, 240 A.3d at 890-91; *Huggins*, 68 A.3d at 970-74. However, those safeguards are in place to circumvent the "heightened possibility for jury confusion," *Huggins*, 68 A.3d at 971 (citation omitted), concerns which are not present in this case where the trial court acted as both the evidentiary gatekeeper and fact-finder. *See Commonwealth v. Smith*, 97 A.3d 782, 788 (Pa. Super. 2014) ("[A] trial court, acting as the finder of fact, is presumed to know the law, ignore prejudicial statements, and disregard inadmissible evidence.").

As described above, it is readily apparent that, after Appellant's first objection, the Commonwealth elicited Officer Shannon's qualifications, the trial court accepted the officer as an expert when it denied Appellant's second objection, and Officer Shannon then offered his expert opinion on whether Appellant had time to safely stop at the intersection. Appellant did not raise a specific objection to the fact that he was not afforded an opportunity to cross-examine the officer on his qualifications. We therefore do not find that the absence of a formal admission of Officer Shannon as an expert constituted

an abuse of discretion. Appellant is therefore not entitled to relief on his first issue.

In his second issue, Appellant argues that Officer Shannon was improperly "allowed to provide testimony implying that all of [Appellant's] physical factors which suggested alcohol impairment to Officer Shannon were in fact caused by alcohol intoxication and not epilepsy." Appellant's Brief at 14-15. Appellant asserts that Officer Shannon was permitted to offer an opinion regarding Appellant's medical condition even though "he did not have knowledge of epilepsy beyond that of 'an average layperson,'" in violation of Rule 702. *Id.* at 14-15. The Commonwealth responds that a "fair reading of the exchange" at issue "reveals that the officer did not testify about epilepsy, or anything related to its impact on" Appellant's inability to perform field sobriety tests. Appellee's Brief at 18. We agree with the Commonwealth that the officer's testimony did not give any pretension of expertise regarding Appellant's medical condition.

The relevant portion of the testimony reads as follows:

Q. To your knowledge, would epilepsy have any effect on the ability to perform [the finger dexterity field sobriety test]?

    MR. KLEIN [Defense counsel]: Objection.

    THE COURT: Sustained.

    MR. GANNON [Prosecutor]: Your Honor, if I may just ask the basis for the objection other than just objection.

    THE COURT: If you want to lay some more foundation.

BY MR. GANNON:

Q Sir, to your testing, would epilepsy, in your training and experience, have any effect on this?

> MR. KLEIN: Objection. I think it's the same question, Your Honor. If he wants to lay a foundation, I don't have a problem. But we don't know if this witness is qualified to answer that.
>
> THE COURT: Officer, during your training did you receive any information as to whether or not any medical conditions would affect the ability for people who you stop to do certain testing such as the finger dexterity test?
>
> THE WITNESS: Not the finger dexterity test. If there's something wrong with their hands, I've had people with braces on their hands, it's a test I wouldn't do because obviously they can't do it. Any conditions with their legs I wouldn't do. Any balance related issues I don't do.

N.T., 7/6/23, at 40-41.

While the Commonwealth's questions regarding whether epilepsy would have an effect on Appellant's ability to perform the finger dexterity test would require specialized knowledge to answer, Officer Shannon did not answer those questions following Appellant's objections. Officer Shannon did answer the trial court's question, but that question and the officer's response only concerned his training regarding medical conditions that might affect the administration of field sobriety tests, and his answer had nothing to do with epilepsy specifically. We note that epilepsy was raised several more times during Officer Shannon's direct and cross-examination, but Appellant did not object to the additional testimony and in any event the officer did not opine on Appellant's medical condition or its impact on his ability to operate a vehicle. **See id.** at 44-45, 85-86, 102. Therefore, as Officer Shannon did not

- 12 -

offer anything resembling an expert opinion on epilepsy, we discern no basis for relief on this claim.

In his final issue, Appellant challenges the sufficiency of the evidence with respect to his DUI—general impairment conviction. Appellant argues that, while there were "clear physical indications of intoxication such as the odor of alcohol[] and slurred speech," the Commonwealth failed to present sufficient other evidence to demonstrate the required element that he was incapable of safely operating a vehicle. Appellant's Brief at 17-19.[3]

A challenge to the sufficiency of the evidence presents a question of law and is subject to plenary review under a *de novo* standard. ***Commonwealth***

_____

[3] Appellant's argument is premised in large part on a claim that this Court should review the record after "excis[ing]" Officer Shannon's allegedly expert testimony raised in Appellant's first two issues for the purpose of our analysis. ***See*** Appellant's Brief at 11-12, 21-24. We do not entertain Appellant's request. Beyond the fact that we have already rejected Appellant's prior arguments as non-meritorious, we are required when presented with a sufficiency claim "to consider all evidence that was actually received, without consideration as to the admissibility of that evidence or whether the trial court's evidentiary rulings are correct." ***Commonwealth v. Arias***, 286 A.3d 341, 350 (Pa. Super. 2022) (citation omitted).

Appellant also argues that we should give "little weight" to other evidence that lacks "trustworth[iness]," including Officer Shannon's testimony that he detected alcohol on Appellant, which allegedly was not included in his incident report, and the officer's use of "not standardized" field sobriety tests. Appellant's Brief at 24. Such arguments are more properly directed to a weight, rather than sufficiency, of the evidence claim. ***See Commonwealth v. Widmer***, 744 A.2d 745, 751-52 (Pa. 2000) (discussing distinction between sufficiency and weight claims). A weight of the evidence claim is not before us because Appellant did not raise such a challenge with the trial court prior to or after sentencing. Pa.R.Crim.P. 607(A); ***Commonwealth v. Barkman***, 295 A.3d 721, 736 (Pa. Super. 2023).

*v. Chisebwe*, 310 A.3d 262, 267 (Pa. 2024). When reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth, were sufficient to prove every element of the offense beyond a reasonable doubt. *Id.* at 268. "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Bowens*, 265 A.3d 730, 740 (Pa. Super. 2021) (*en banc*) (citation omitted). Finally, we note that the trier of fact has the authority to determine the weight of the evidence and credibility of the witnesses and is free to believe all, part, or none of the evidence. *Id.* at 741.

To sustain a conviction for DUI—general impairment, the Commonwealth must prove that the defendant was (1) operating a vehicle (2) after imbibing a sufficient amount of alcohol such that he was rendered incapable of safely operating the vehicle. 75 Pa.C.S. § 3802(a)(1); *Commonwealth v. Clemens*, 242 A.3d 659, 665 (Pa. Super. 2020). To establish the second element, "it must be shown that alcohol has substantially impaired the normal mental and physical faculties required to safely operate the vehicle." *Commonwealth v. Banks*, 253 A.3d 768, 775 (Pa. Super. 2021) (citation omitted); *see also Clemens*, 242 A.3d at 665. Substantial impairment, within the context of the DUI statute, means a diminution or enfeeblement in the ability to exercise judgment, deliberate, or react

prudently to changing circumstances and conditions. ***Banks***, 253 A.3d at 775; ***Clemens***, 242 A.3d at 665.

Our Supreme Court has provided examples of the manner of proof upon which the Commonwealth may rely to show a defendant's incapacity to safely operate a vehicle:

> The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary . . . . The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol-not on a particular blood alcohol level.

***Commonwealth v. Segida***, 985 A.2d 871, 879 (Pa. 2009). Further, a defendant's refusal to undergo blood testing is admissible as evidence of consciousness of guilt in a DUI prosecution. ***Commonwealth v. Bell***, 211 A.3d 761, 773-76 (Pa. 2019).

Viewing the evidence in the light most favorable to the Commonwealth as required by our sufficiency review, there was ample evidence that Appellant was unable to safely operate his vehicle on January 8, 2023. Officer Shannon first observed Appellant's vehicle as the officer was turning onto Mill Creek Road and Appellant "slammed" on his brakes so as to avoid going through the

red light and striking the officer's car. N.T., 7/6/23, at 10-11, 22-23; Commonwealth Exhibit 1. Officer Shannon turned around to follow Appellant and then saw Appellant's vehicle drifting across the white divided line into the neighboring lane before correcting itself. N.T., 7/6/23, at 11-13, 24-25; Commonwealth Exhibit 1. Officer Shannon also observed Appellant accelerate at a high rate of speed to pass through a yellow light when he had sufficient time to stop before the light turned red. N.T., 7/6/23, at 14-15, 21-22, 25-28; Commonwealth Exhibit 1. Officer Shannon testified that Appellant's erratic driving was consistent with intoxicated driving. N.T., 7/6/23, at 14-15, 29-30.

Upon approaching Appellant's vehicle on foot after pulling him over, Officer Shannon detected the odor of alcohol, saw that Appellant had bloodshot, glassy eyes, and observed an unopened six-pack of beer in the passenger seat. *Id.* at 30-34. When asked if he had consumed any alcohol that evening, Appellant stated that he had drank two beers. *Id.* at 35. He spoke in a "thick-tongue" manner that is a hallmark of alcohol intoxication, according to the officer. *Id.* at 31, 34-35. Officer Shannon administered two field sobriety tests on Appellant while he was in the car, and he failed both. *Id.* at 36-42. When asked to exit the car by the officer, Appellant was unsteady on his feet, he became argumentative, and he then refused to participate in additional field sobriety tests. *Id.* at 43-44; Commonwealth Exhibit 1. While Appellant informed the officer that his refusal to perform any further field sobriety tests was due to epilepsy, the trial court as fact-finder

was within its authority to reject this assertion. N.T., 7/6/23, at 44; *see Bowens*, 265 A.3d at 741. Finally, after transport back to the police station, Appellant refused blood testing. N.T., 7/6/23, at 47-48.

In light of this overwhelming evidence, we find no merit to Appellant's sufficiency of the evidence challenge. *See Commonwealth v. Mobley*, 14 A.3d 887, 889-90 (Pa. Super. 2011) (finding evidence sufficient to prove DUI—general impairment where the defendant failed sobriety tests, appeared disoriented, had a slow speech pattern, smelled of alcohol, and coasted through a stop sign); *Commonwealth v. Hartle*, 894 A.2d 800, 804-05 (Pa. Super. 2006) (determining that evidence was sufficient for DUI conviction where the defendant ran a stop sign, smelled of alcohol, had bloodshot and glassy eyes, refused to perform field sobriety tests, and refused a breath test). As we have rejected each of Appellant's appellate issues, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/16/2024