IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 109 MAP 2023 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court at No. 84 EDA 2022 |
| | : | dated January 9, 2023, Reargument |
| v. | : | denied March 17, 2023, Affirming |
| | : | the Judgment of Sentence of the |
| | : | Delaware County Court of Common |
| RASHEED MUHAMMAD, | : | Pleas, Criminal Division, at No. CP- |
| | : | 23-CR-0001435-2019 entered |
| Appellant | : | November 30, 2021. |
| | : | |
| | : | ARGUED:  May 14, 2024 |

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

**JUSTICE DOUGHERTY**                              **DECIDED:  May 30, 2025**

In this appeal we are tasked with examining whether a jury's negative answer to a special interrogatory — asking whether appellant Rasheed Muhammad possessed and controlled a firearm — renders the evidence insufficient to support his conviction for carrying a firearm without a license.  As we discern no conflict between the jury's answer and Muhammad's conviction, we find it does not.  Accordingly, we affirm the order of the Superior Court, which affirmed Muhammad's judgment of sentence.

On December 18, 2018, the police received a report of check fraud at a bank, where it was alleged two people had attempted to cash forged checks.  One of the suspects exited the bank and walked towards a Kia Soul parked outside before returning to the bank.  After detaining the two suspects inside the bank, the police searched for the Kia Soul.  Lieutenant (then Sergeant) Matthew Egan located a vehicle that matched the

description parked across the street from the bank and noticed a single male occupant in the vehicle, Muhammad, who was seated in the driver's seat. Lieutenant Egan blocked the car into its parking spot and approached the vehicle, noting a heavy odor of marijuana emanating from the vehicle and observing suspected marijuana in plain view.

Lieutenant Egan requested Muhammad produce his driver's license, registration, and proof of insurance. In response, Muhammad provided the officer with his license but told him he did not have the other information. He said the car was a rental, and he had to look for the rental agreement. Muhammad proceeded to open and search the car's center console. He also searched the front passenger side of the car, the glove box, and other areas of the vehicle. As he searched, he angled his body to block the officer's view of the center console and continually looked over his shoulder. Eventually, Muhammad produced a rental agreement for the car, which listed him as the renter. Lieutenant Egan, concerned by Muhammad's attempts to block his view and fearful for his safety, retreated behind an adjacent car while he waited for backup. Once backup arrived, Lieutenant Egan asked Muhammad to step outside of the car and then patted him down for weapons, finding nothing. The officer questioned Muhammad about his connection to the individuals arrested in the bank. Muhammad responded he was a "hack," a slang term for an unlicensed cab driver, and had driven the two individuals to the bank. Lieutenant Egan directed Muhammad to sit in the back of the police vehicle while he conducted a search of Muhammad's car.

Lieutenant Egan opened the car's center console and found a loaded and operable firearm — a five-shot, Smith and Wesson .38 caliber Special. Muhammad did not have a valid license to carry a firearm. The officer then began placing Muhammad under arrest, but Muhammad fled, resisting until he was eventually tased. In addition to the gun, the police recovered several pieces of mail addressed to Muhammad from the car.

The Commonwealth charged Muhammad with multiple offenses, including persons not to possess firearms under 18 Pa.C.S. §6105,[1] and carrying a firearm without a license under 18 Pa.C.S. §6106.[2]

Relevant here, a conviction under Section 6105(a) requires proof of a prior conviction for an offense enumerated in subsection (b). At Muhammad's jury trial, to prevent the jury from learning of Muhammad's prior conviction and preclude the attendant prejudice to him which might arise from this disclosure, the trial court, with the agreement of the parties, did not instruct the jury that he had been charged with persons not to possess firearms. Instead, the court instructed the jurors Muhammad was charged with "[p]ossessing a [f]irearm," which is not a crime under Pennsylvania law. *See* N.T. Jury Trial, 10/14/21, at 119. In addition, the verdict slip provided to the jury included the following question: "Did the Defendant Rasheed Muhammad on December 18, 2018 possess and have under his control a firearm, to wit a Smith & Wesson 38 Caliber Special?" Verdict Slip, 10/14/21, at 4. Beneath this question were spaces for the jury to check either "yes" or "no." *Id*. In the event the jury answered "yes" to this interrogatory, the court intended to inform them there was a stipulation Muhammad had a criminal history barring him from possessing a gun under Section 6105, instruct them on this offense, and have them determine whether or not he was guilty of persons not to possess

---

[1] *See* 18 Pa.C.S. §6105(a)(1) ("A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.").

[2] *See* 18 Pa.C.S. §6106(a)(1) ("Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.").

firearms. *See* N.T. Jury Trial, 10/14/21, at 135. As it happens, however, the jury checked the "no" space.

Ultimately, the jury convicted Muhammad of carrying a firearm without a license and resisting arrest.[3] Prior to sentencing, Muhammad made an oral motion for extraordinary relief seeking a judgment of acquittal for carrying a firearm without a license, which was denied. The trial court sentenced Muhammad to 3 ½ to 7 years' imprisonment for carrying a firearm without a license, followed by 2 years' probation for resisting arrest. Following the denial of Muhammad's post-sentence motion, he appealed to the Superior Court.

In a published opinion, a three-judge panel of the Superior Court unanimously affirmed Muhammad's judgment of sentence. *See Commonwealth v. Muhammad*, 289 A.3d 1078, 1091-92 (Pa. Super. 2023). Pertinently, in addressing Muhammad's claim the evidence was not sufficient to support his conviction for carrying a firearm without a license, the panel first noted the firearm was not found on Muhammad's person during the events in question, and thus the concept of constructive possession applied. The panel then drew attention to several circumstances surrounding the events leading to Muhammad's arrest, namely that the firearm recovered was in the console next to where he had been sitting, Muhammad was the only occupant in the car, and his movements and the positioning of his body indicated knowledge of the firearm and intent to conceal it. Thus, the panel concluded the evidence was sufficient to support Muhammad's conviction, as a jury could reasonably infer the unlicensed firearm belonged to him.

The panel rejected Muhammad's claim that the jury's "no" answer in response to the interrogatory in the verdict slip invalidated his firearms conviction. The panel cited several cases supporting the "well-settled" principle that consistency is not required in a

---

[3] The jury acquitted Muhammad of two counts each of forgery and conspiracy to commit forgery.

verdict. *Id*. at 1091-92, *citing Commonwealth v. Widger*, 237 A.3d 1151, 1160-61 (Pa. Super. 2020), *appeal denied*, 249 A.3d 505 (Pa. 2021) (inconsistent verdicts are not reviewable because they require speculation as to jury deliberation; independent review by our courts as to sufficiency of evidence provides criminal defendants protection against jury error); *Commonwealth v. Banks*, 253 A.3d 768 (Pa. Super. 2021), *appeal denied*, 267 A.3d 1213 (Pa. 2021) (inconsistent verdicts are not mistakes constituting a basis for reversal; courts should not disturb guilty verdicts on the basis of inconsistencies so long as there is evidence to support the verdict). The panel then noted the verdict sheet did not connect the interrogatory with the separate offense under Section 6106. [4]  It concluded the "apparent inconsistency in the verdict here . . . is not considered a mistake and does not constitute a basis for reversal." *Muhammad*, 289 A.3d at 1092.

We granted Muhammad's petition for allowance of appeal to consider the following rephrased question:

> Was the evidence insufficient to support [Muhammad's] conviction for firearms not to be carried without a license, 18 Pa.C.S. §6106, where the jury made a specific factual finding that [Muhammad] did not possess a firearm in response to a special interrogatory to which all parties and the trial court had agreed?

---

[4] The dissent argues that "contrary to the Majority's belief, the 6106 instruction was the only crime-related charge that the jury was given along with the interrogatory." Dissenting Opinion at 4. Thus, according to the dissent, "[i]t is obvious the jury only could impute the interrogatory to the 6106 charge since that was the only count the jury was being asked to decide." *Id.* We are here recounting the reasoning of the Superior Court panel below, not our "belief." Moreover, in addition to instructing the jury on the nonexistent crime of possession of a firearm and the actual crime of carrying a firearm without a license, the trial court also instructed the jury that Muhammad was charged with the crimes of forgery, conspiracy to commit forgery, and resisting arrest, and specifically defined each of these offenses. *See* N.T., 10/14/21, at 119-127. The verdict sheet likewise noted the crimes of forgery, conspiracy to commit forgery, and resisting arrest, and asked the jury to check either "guilty" or "not guilty" as to each of these charges. *See* Verdict Slip, 10/14/21, at 1-3. Clearly, the trial court's instruction regarding Section 6106 was not "the only crime-related charge that the jury was given[,]" and the 6106 charge was not "the only count that the jury was being asked to decide." Dissenting Opinion at 4.

*Commonwealth v. Muhammad*, 308 A.3d 766 (Pa. 2023) (*per curiam*). "Evidentiary sufficiency is a question of law and, therefore, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Chisebwe*, 310 A.3d 262, 267 (Pa. 2024), *quoting Commonwealth v. Smith*, 234 A.3d 576, 581 (Pa. 2020). The standards governing sufficiency review are well-settled:

> In conducting sufficiency review, we consider whether the evidence introduced at trial and all reasonable inferences derived therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish the elements of the offense beyond a reasonable doubt. Our review does not involve reweighing the evidence and substituting our judgment for that of the fact-finder. In addition, the facts and circumstances need not be absolutely incompatible with the defendant's innocence; rather, the question of any doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Id*. at 268 (cleaned up).

Muhammad maintains the jury's response of "no" to the special interrogatory precludes a finding of sufficient evidence to sustain a conviction for carrying a firearm without a license. He recognizes our Court has previously found inconsistent verdicts to be generally acceptable and acknowledges the rationale for allowing such verdicts — the inability of reviewing courts to ascertain the jury's rationale for the inconsistent verdict. However, Muhammad contends this reasoning does not apply in this instance, as there was no ambiguity in the question posed to the jury, and thus no reason to believe the jury was influenced in a particular manner. In his view, the trial court supplied the jury with the proper definition of constructive possession when providing instructions but failed to provide an adequate instruction for the purposes of a conviction under Section 6106. He argues the jury's factual finding, that Muhammad did not possess a firearm, negates a necessary element of Section 6106, as this conviction requires the possession of a firearm. Thus, Muhammad insists his conviction under Section 6106 cannot stand, as the trial court incorrectly disregarded the jury's specific factual findings.

In response, the Commonwealth argues the principles of inconsistent verdicts should apply in this situation, despite the jury not rendering a formal "verdict" in response to the interrogatory, as the jury could reasonably believe simply possessing a firearm constituted a stand-alone offense. The Commonwealth also maintains the jury had no reason to believe the two gun charges were connected, as the verdict sheet, trial court instructions, and statutory definitions themselves reveal no connection between them. In the Commonwealth's view, the special interrogatory was never intended to reference Section 6106 but instead act as a placeholder for a separate offense under Section 6105. The Commonwealth contends the crime of carrying a firearm without a license has no predicate offense and possession is not an explicit statutory element of Section 6106. Thus, the Commonwealth concludes the evidence was sufficient to convict Muhammad of carrying a firearm without a license.[5]

In reply, Muhammad disputes the Commonwealth's argument the interrogatory concerned different counts, arguing the jury was not actually instructed to deliberate on another count and any concerns regarding lenity or compromise would not apply. He also reiterates that a conviction for a violation of Section 6106 requires the possession of a firearm, and thus the jury's finding he did not possess a gun dictates reversal of his conviction.

Again, a defendant is guilty of carrying a firearm without a license if he "carries a firearm in any vehicle or . . . carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license[.]"  18 Pa.C.S. §6106(a)(1).  Here, the evidence demonstrated the police

---

[5] *Amicus curiae* the Pennsylvania District Attorneys Association likewise advocates for affirmance of Muhammad's judgment of sentence, arguing there is nothing in the record to indicate the parties intended the two charges to be considered jointly, and nothing to indicate the jury believed a conviction under Section 6106 was dependent upon a precursory conviction under Section 6105.

recovered an operable firearm from the center console of a car parked on a public street. Muhammad was the only person in the car when the police approached it. He was seated directly next to the center console in close proximity to the gun. He opened and rooted through the center console where the firearm was located. He tried to conceal the weapon from the police. He resisted arrest. The car was rented to him. His personal mail was inside the vehicle. He lacked a license to carry a firearm. The totality of this evidence was amply sufficient to support Muhammad's conviction for carrying a firearm without a license.

Moreover, we hold the jury's negative answer to the special interrogatory does not alter this conclusion. As noted, the query on the verdict slip asked: "Did the Defendant Rasheed Muhammad on December 18, 2018 possess **and have under his control** a firearm, to wit a Smith & Wesson 38 Caliber Special?" *See* Verdict Slip, 10/14/21, at 4 (emphasis added). Hence, the interrogatory did not simply ask whether Muhammad possessed the firearm. It instead posed a conjunctive query: whether Muhammad possessed the gun **and had it under his control**. The interrogatory was not merely a question of possession, but instead a question of both possession and control. Thus, notwithstanding the phrasing of our order granting allowance of appeal, the jury's "no" answer to this compound question did not constitute a specific finding Muhammad did not possess the firearm. Rather, the jury's negative response reflects their determination he did not both possess **and control** the gun in question.

The crime of carrying a firearm without a license, however, does not require a finding of possession and control of the weapon. By its plain terms, Section 6106 applies to "any person who carries a firearm in any vehicle[.]" 18 Pa.C.S. §6106(a)(1). Even

assuming "carries" means "possesses" for purposes of Section 6106,[6] there is certainly nothing in the statute requiring that in addition to carrying the firearm in a vehicle, the defendant must also control the gun as well. *See Commonwealth v. Wright*, 14 A.3d 798, 814 (Pa. 2011) ("[A]s a matter of statutory interpretation, although one is admonished to listen attentively to what a statute says[,] one must also listen attentively to what it does not say."), *quoting Kmonk–Sullivan v. State Farm Mut. Auto. Ins. Co.*, 788 A.2d 955, 962 (Pa. 2001).[7] On the contrary, as the trial court correctly recognized in instructing the jury on this charge, to convict Muhammad of carrying a firearm without a license there were only three elements the jury needed to find beyond a reasonable doubt: "First, that [Muhammad] carried the firearm in a vehicle. . . . Second, that [he] was not in his place of abode; that is his home or a fixed place of business. . . . And, third, that [he] did not have a valid and lawfully issued license to carry a firearm." N.T. Jury Trial, 10/14/21, at

---

[6] We observe, parenthetically, that other provisions in the Uniform Firearms Act explicitly use the word "possess." *See* 18 Pa.C.S. §§6105(a) (person convicted of an enumerated offense "shall not **possess**, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth"); 6110.1(a) ("[A] person under 18 years of age shall not **possess** or transport a firearm anywhere in this Commonwealth."); 6110.2(a) ("No person shall **possess** a firearm which has had the manufacturer's number integral to the frame or receiver altered, changed, removed or obliterated.") (emphasis added).

[7] While acknowledging "there is reason to question whether 'carries' is synonymous with 'possession,'" the dissent nonetheless charges us with "attempt[ing] to *sub silentio* overrule five decades of precedent equating 'carries' with 'possession.'" Dissenting Opinion at 1; *see also id.* at 9 ("I thus turn to the Majority's implicit overruling of fifty years of precedent that defines Section 6106 as a possessory offense."). However, as the dissent concedes, the precedent it cites "is divorced from any explicit consideration of whether 'carries' is something distinct from 'possesses.'" *Id.* at 15. In any event, we are not overruling any of these cases, "implicitly" or otherwise. On the contrary, as expressly noted above, we assume for purposes of our analysis that "carries" and "possesses" are synonymous in this context. Our disposition turns not on whether there is a distinction between "carries" and "possesses," but rather on the incontrovertible fact that Section 6106 does not require "control" of the firearm.

126-27.  Notably, this instruction, which tracks the statutory language of Section 6106(a), omits any mention of "control."  Likewise, Muhammad himself simply argues "§6106 requires possession of a firearm."  Appellant's Brief at 17.  He does not insist there is an additional, unstated element of control.

In sum, we find no actual inconsistency between the jury's answer to the special interrogatory and Muhammad's conviction for carrying a firearm without a license.  The interrogatory posed a conjunctive question asking whether Muhammad "possess[ed] and ha[d] under his control" a firearm.  That made-up question, pertaining to a made-up crime, does not reflect the elements of the very real crime of carrying a firearm without a license.  In fact, as discussed, the words "possess" and "control" do not even appear in Section 6106(a), let alone as a conjunctive phrase.  We thus detect no inconsistency here.  The jury could have reasonably concluded Muhammad failed to "possess and have under his control" the firearm given that it was stashed away in the center console and hidden from

view, while simultaneously (and properly) finding that he "carrie[d it] in any vehicle[.]" 18 Pa.C.S. §6106(a)(1).[8, 9]

We recognize our disposition does not address the question of whether the evidence may be insufficient to support a conviction where a guilty verdict is in fact inconsistent with the jury's answer to a special interrogatory. While we do not reach the merits of this issue, it is our hope and expectation that it will not be a recurring one. There

---

[8] Justice Wecht argues the jury's "no" answer to the interrogatory was "inconsistent with a conviction under Section 6106" because "'[c]arrying' a gun per Section 6106 requires possession, which entails not only proximity, but also control or power and intent to control." Concurring and Dissenting Opinion (Wecht, J.) at 5. This argument is self-defeating. A conviction under Section 6106 may be based on a "constructive possession theory." *Commonwealth v. Peters*, 218 A.3d 1206, 1211 (Pa. 2019). As Justice Wecht acknowledges, constructive possession simply "requires the power and intent to control." Concurring and Dissenting Opinion (Wecht, J.) at 4-5. *See Commonwealth v. Johnson*, 26 A.3d 1078, 1093 (Pa. 2011) ("The existence of constructive possession of a[n item] is demonstrated by the ability to exercise a conscious dominion over the [item]: the power to control the [item] and the intent to exercise that control.") (quotation marks and citations omitted). In other words, constructive possession does not require actual control. Thus, the jury's conviction of Muhammad based on a constructive possession theory would have been perfectly consistent with their negative answer to the special interrogatory, which required actual control rather than mere power and intent to control.

Meanwhile, the dissent insists "the concept of 'control' was subsumed within" the trial court's jury instructions on constructive possession. Dissenting Opinion at 8. It was not. The trial court correctly charged the jury that constructive possession requires the power and intent to control the item in question. *See* N.T., 10/14/21, at 125 ("For there to be constructive possession, it must be proved beyond a reasonable doubt that the individual had both the intent to control an item and the power to control an item."); *id.* at 140-41 (substantially same). The power and intent to control does not subsume actual control.

[9] In light of our conclusion that the inconsistent verdicts doctrine is not implicated on these facts, we have no occasion to address the correctness and continued vitality of *Commonwealth v. Magliocco*, 883 A.2d 479 (Pa. 2005). *See* Concurring and Dissenting Opinion (Wecht, J.) at 12 ("I would also take this opportunity to eliminate confusion engendered in our case law for two decades by *Commonwealth v. Magliocco*[,]" wherein "this Court held that, where one offense is defined by statute to require the commission of another, predicate offense, an acquittal on the predicate offense renders the evidence insufficient to sustain a conviction on the encompassing offense.").

is no authority expressly authorizing the use of special interrogatories in criminal trials, and they are generally disfavored in this context. *See Commonwealth v. Samuel*, 961 A.2d 57, 64 (Pa. 2008) ("[I]n contrast to civil cases, where there is specific authority for special verdicts, . . . there is no such provision in criminal trials, and '[t]he proposal of special verdicts in criminal trials to determine what issues the jury actually resolved has been almost universally condemned.'"), *quoting Commonwealth v. Campana*, 304 A.2d 432, 438 n.27 (Pa. 1973) (plurality); *accord Commonwealth v. Jacobs*, 39 A.3d 977, 987 (Pa. 2012) (opinion announcing judgment of court). Accordingly, notwithstanding the differing viewpoints expressed by members of this Court respecting other issues, we take this opportunity to formally proscribe the future use of the process employed here respecting the charge of persons not to possess firearms. Instead, trial courts should employ less problematic procedures to avoid the potential prejudice resulting from the exposure of a defendant's criminal history to the jury, such as bifurcation.

For the foregoing reasons, the order of the Superior Court upholding Muhammad's judgment of sentence is affirmed.

Chief Justice Todd and Justice Mundy join the opinion announcing the judgment of the Court.

Justice Wecht files a concurring and dissenting opinion.

Justice Brobson files a concurring and dissenting opinion.

Justice McCaffery files a dissenting opinion in which Justice Donohue joins.