J-S20041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DUSHAWN ONELL ELLIS | : | |
| | : | |
| Appellant | : | No. 780 MDA 2024 |

Appeal from the Judgment of Sentence Entered February 26, 2024
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0002598-2022

BEFORE:  OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:          **FILED: JULY 24, 2025**

Appellant, Dushawn Onell Ellis, appeals from the aggregate judgment of sentence of 8½ to 22 years' incarceration, imposed after he was convicted of several offenses related to witness intimidation and the obstruction of justice. Appellant alleges the Commonwealth violated **Brady v. Maryland**, 373 U.S. 83 (1963), and also challenges the sufficiency and weight of the evidence to sustain his convictions.  After careful review, we affirm.

We glean the following facts from the record.  On November 4, 2021, Appellant was arrested and charged, in a case docketed at CP-06-CR-817-2022 (hereinafter "case 817-2022"), with several offenses, including two counts of involuntary servitude (18 Pa.C.S. § 3012(b)(1)), trafficking in individuals (18 Pa.C.S. § 3011(a)(2)), and prostitution (18 Pa.C.S. § 5902). On March 15, 2022, the victim in case 817-2022, T.S., testified at Appellant's preliminary hearing, claiming that Appellant had forced her to engage in

sexual acts with other individuals for money by threatening T.S. with violence and procuring drugs for her. Based on T.S.'s testimony, Appellant's charges were bound over for trial. Appellant thereafter filed a motion for *habeas corpus* in case 817-2022, and a hearing was scheduled for June 28, 2022. T.S. was scheduled to testify at that hearing.

While awaiting trial in case 817-2022, Appellant was incarcerated in the county prison. Another inmate at the prison, David Nester, was the brother of T.S.'s best friend, S.D. On May 19, 2022, Nester was in his cell when Appellant approached the cell and told Nester "that there was a $20,000 hit on [T.S]." N.T. Trial, 12/5/23-12/6/23, at 79, 84. Shawn Peck, Nester's cellmate, was also present during this conversation and heard Appellant say there was "a $20,000 hit" on T.S. and "that [Appellant] was going to pay somebody to do it." *Id.* at 98, 102. Appellant later slid a copy of the affidavit of probable cause in case 817-2022 under the door to Nester and Peck's cell. The affidavit had Appellant's handwriting on it, and identified T.S. as Appellant's victim.

Shortly after this interaction between Appellant, Nester, and Peck, Nester made two calls to his sisters, A.N. and S.D., and told them about the alleged hit on T.S.[1] S.D. then called T.S. and told her what Nester had said about the hit. *Id.* at 73-74.

_____

[1] Pertinent to the first issue Appellant raises on appeal, we note that the Commonwealth admitted audio recordings of Nester's calls to his sisters at
*(Footnote Continued Next Page)*

Then, on June 8, 2022, Appellant initiated a video call with T.S., and the following exchange occurred:

[T.S.]: Bro, listen. I don't know why you think it's cool threatening me, saying you got a $20,000.00 hit on my head.

[Appellant]: I said that?

\*\*\*

[T.S.]: What you mean? I just said what's good. You're tell[ing] people you have a $20,000.00 hit on my head.

[Appellant]: What's up? Are you coming to court on me?

[T.S.]: I don't know why you are calling me.

\*\*\*

[T.S.]: No, I'm not going to court on you. I just want you to stop threatening me.

*Id.* at 427 (a transcription of the telephone call, admitted as Commonwealth's Exhibit 19); *id.* at 164 (Commonwealth's admitting Exhibit 19 without objection). On June 10, 2022, Appellant initiated another video call with T.S., during which he again asked if she was "coming to court on [him.]" *Id.* at 428 (a transcription of the telephone call, admitted as Commonwealth's Exhibit 20); *id.* at 164 (Commonwealth's Exhibit 20 being admitted without objection). When T.S. replied that she was not coming to court, Appellant replied, "Alright. I'll stop." *Id.* at 428.

_____

trial. Regarding one of the recordings, the Commonwealth had incorrectly notified Appellant, prior to trial, that Nester was speaking with S.D. on the call, but during S.D.'s testimony at trial, she revealed that it was actually her sister, A.N., on that call with Nester. *See id.* at 72.

- 3 -

Ultimately, T.S. testified at the June 28, 2022 *habeas corpus* hearing in case 817-2022. However, she had to be subpoenaed to come to court, and on the stand she was "crying, appeared possibly under the influence, was curled almost into a fetal position[,] and [was] very emotional." Trial Court Opinion (TCO), 6/19/24, at 7. "[D]ue to [T.S.'s] reluctance to testify because of her fear, the Commonwealth *nolle prossed* the sex[-]trafficking charges that had been filed against [Appellant]" in case 817-2022. Commonwealth's Brief at 16.

However, the Commonwealth subsequently filed various charges relating to intimidation of a witness against Appellant in the instant case. Following a jury trial on December 5th and 6th of 2023, Appellant was convicted of two counts of intimidation of a witness/victim under 18 Pa.C.S. § 4952(a)(3) (intimidating a witness/victim to withhold testimony, information, document or thing relating to commission of a crime) and (a)(5) (intimidating a witness/victim to elude, evade or ignore a request to appear to testify or supply evidence), and one count of obstructing the administration of law or other governmental function under 18 Pa.C.S. § 5101. The jury acquitted him of intimidation of a witness/victim under 18 Pa.C.S. § 4952(a)(6) (intimidating a witness/victim to absent himself from any proceeding or investigation to which he has been legally summoned), retaliation against a witness/victim under 18 Pa.C.S. § 4953(a), and terroristic threats under 18 Pa.C.S. § 2706(a)(1).

On February 26, 2024, Appellant was sentenced to the aggregate term set forth *supra*. He filed a timely post-sentence motion, which was denied after a hearing. Appellant then filed a timely notice of appeal, and he and the court complied with Pa.R.A.P. 1925. Herein, Appellant states three issues for our review:

> A. Whether [the] Commonwealth committed a **Brady** violation and/or a violation of [Appellant's] due process rights for [its] failure to provide [the] defense with the correct name for the individual who was part of a phone record, and rather[,] provided [the] defense with incorrect information?
>
> B. Whether the evidence presented at trial was insufficient as a matter of law to sustain the verdict wherein the Commonwealth's evidence presented at trial failed to establish that [Appellant] committed any act which could constitute a threat and/or act of intimidation?
>
> C. Whether the verdict was against the weight of the evidence wherein the verdict is so contrary to evidence and shocks one's sense of justice where the Commonwealth's evidence presented at trial failed to establish that [Appellant] committed any act against the alleged victim[,] thereby failing to establish either an *actus reas* or a *mens rea* for the crimes charged?

Appellant's Brief at 4 (unnecessary capitalization omitted).

Appellant first contends that the Commonwealth committed a **Brady** violation by failing "to provide the [d]efense with the correct name for the individual who was part of a phone record." **Id.** at 12. Namely, Appellant takes issue with the Commonwealth's incorrectly naming S.D. as the individual speaking with Nester in the call transcribed at Commonwealth's Exhibit 20, when S.D. testified that the individual speaking on that call was actually her sister, A.N. According to Appellant, he was

put at an unfair disadvantage, and [had] an inability to plan [his] defense accordingly. The Commonwealth failed to provide [him] with a fact witness who may have [had] a different recollection of the call, a call which was the main source of evidence for the Commonwealth's case. The [d]efense was, by the Commonwealth's actions or failure to act, precluded from questioning an essential witness.

*Id.* at 12-13.

Our Supreme Court has explained:

The law governing alleged ***Brady*** violations is well-settled. In ***Brady***, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

\*\*\*

On the question of materiality, the Court has noted that such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. The materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions. Rather, the question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Thus, there are three necessary components that demonstrate a violation of the ***Brady*** strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued.

***Commonwealth v. Lambert***, 884 A.2d 848, 854 (Pa. 2005) (cleaned up).

In this case, Appellant fails to establish that a ***Brady*** violation occurred.

Initially, the record supports the trial court's determination that the

"'misidentification' appeared to be a surprise to the Commonwealth as well."

TCO at 10.  ***See also*** N.T. Trial at 72 (the Commonwealth's asking S.D. who was speaking on the at-issue phone call, to which S.D. replied, "You're actually not going to like my answer to this because that is not me on the phone. That's actually my sister…."). Although an inadvertent withholding of favorable evidence can constitute a ***Brady*** violation, Appellant here offers no discussion of how the fact that A.N. was the individual on the call with Nester was favorable to him. He also offers no developed discussion explaining how he was prejudiced by his not discovering that A.N. was on the call until S.D. revealed this fact at trial. Notably, Appellant made no attempt to call A.N. to the stand after this revelation or request a continuance to further investigate the implications of this new fact. Thus, Appellant has not established that the revelation that A.N. was the person speaking to Nester on the at-issue call was favorable evidence that could have reasonably "put the whole case in such a different light as to undermine confidence in the verdict." ***Lambert***, 884 A.2d at 854. Thus, his ***Brady*** claim fails.

Next, Appellant challenges the sufficiency of the evidence to sustain his convictions. Initially, we observe that,

> [w]hether the evidence was sufficient to sustain the charge presents a question of law. Our standard of review is *de novo*, and our scope of review is plenary. In conducting our inquiry, we examine[,]
>
> > whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, [is] sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the

- 7 -

evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

***Commonwealth v. Rojas-Rolon***, 256 A.3d 432, 436 (Pa. Super. 2021) (cleaned up).

Here, Appellant challenges his convictions for two counts of intimidation of a witness/victim, defined under the following provisions of 18 Pa.C.S. § 4952:

**(a) Offense defined.--**A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:

***

(3) Withhold any testimony, information, document or thing relating to the commission of a crime from any law enforcement officer, prosecuting official or judge.

***

(5) Elude, evade or ignore any request to appear or legal process summoning him to appear to testify or supply evidence.

18 Pa.C.S. § 4952(a)(3), (5).

Appellant contends that here, the Commonwealth failed to prove that he did any act that intimidated, or attempted to intimidate, T.S. into

withholding testimony or evading a request to appear in court. According to Appellant,

> David Nester himself testified that [Appellant] never said he ordered a hit, and that he relayed this information to his sister to relay to [T.S.] just in case she heard, and she was concerned about it; that it was jail house kind of talk. Moreover, there was no threat in the affidavit of probable cause[,] which the Commonwealth also tried to argue was a threat. Writing a name, instead of initials, cannot be a threat. To allow the law to conclude so would be absurd. Sean Peck's testimony was wholly incredible, in that it was not corroborated by David Nester, and he admitted not even hearing all the conversation.

Appellant's Brief at 14.

Appellant's argument is unconvincing. Initially, Appellant does not provide any citations to the trial testimony to support his argument. Moreover, the Commonwealth was not required to prove that Appellant had actually paid someone to harm T.S., or that he intended to do so. Thus, although Nester testified that Appellant never "directly" admitted that "***he put*** out a $20,000 hit on [T.S.]," that fact is irrelevant. N.T. Trial at 90 (emphasis added).

Instead, the Commonwealth was only required to prove that Appellant committed an act that intimidated, or attempted to intimidate, T.S., with the intent to compel her not to testify against Appellant. It was reasonable for the jury to infer from the Commonwealth's evidence, viewed in the light most favorable to it as the verdict winner, that Appellant committed this act. Namely, Nester and Peck both testified that Appellant told them there was a "hit" on T.S. for $20,000. Appellant knew that Nester's sister was T.S.'s best

friend. Peck also testified that he heard Appellant say that **he** "was going to pay somebody to do it." **Id.** at 98, 102. The jury was free to believe this testimony, even though Nester did not claim to have heard this same statement by Appellant, especially when Peck testified that Nester was scared of Appellant. **See id.** at 107. Moreover, during phone calls with T.S., Appellant repeatedly questioned whether she was going to testify against him. After T.S. confronted him about "telling people [Appellant had] a $20,000 hit on [her] head[,]" and said she "just want[ed Appellant] to stop threatening [her,]" Appellant said he would "stop" after T.S. told him she was not coming to court. **Id.** at 427, 428.

From the totality of this evidence, it was reasonable for the jury to infer that Appellant conveyed to Nester that there was a $20,000 "hit" out on T.S., so that Nester would tell his sister, who would then tell T.S., in order to intimidate T.S. into not testifying against Appellant in case 817-2022. Ultimately, T.S. appeared to testify, but was so scared and reluctant that the Commonwealth withdrew the charges in that case. This evidence was sufficient to support Appellant's two counts of intimidation of a witness/victim.

Next, Appellant argues that the jury's verdict was contrary to the weight of the evidence.

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of

- 10 -

the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

***Commonwealth v. Houser***, 18 A.3d 1128, 1135-36 (Pa. 2011) (citations and internal quotation marks omitted).

Instantly, Appellant first claims that the jury's verdict was contrary to the weight of the evidence because "[t]he Commonwealth's evidence failed to establish that [Appellant] did any offense against the victim," and it also presented no evidence "that he possessed the requisite *mens rea* for any of the charges…." Appellant's Brief at 16. This cursory claim is meritless for the reasons set forth supra.[2]

Additionally, Appellant contends that the jury's verdict was contrary to the weight of the evidence because

[t]he charges to which [Appellant] was found guilty make no sense when considered along with the charges to which he was found not guilty. [Appellant] was found not guilty in the charge

---

[2] To the extent Appellant may be attempting to challenge whether the Commonwealth proved the *mens rea* element for his obstruction charge under 18 Pa.C.S. § 5101, which was not addressed in our discussion of his sufficiency claim, he has not meaningfully developed any argument regarding why the Commonwealth's evidence failed to prove that element of his obstruction offense. Thus, it is waived. ***See Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007) ("When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. … [W]hen defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.").

of retaliation of a witness and in terroristic threats. If the purported act by which [Appellant] intimidated [T.S.] was the informing of her that there was a $20,000 threat on her head, how could the jury not have found him guilty of terroristic threats[?] The facts simply cannot support such findings logically or legally.

**Id.**

In rejecting this claim, the trial court opined:

[Appellant] alleges that the charges where guilty verdicts were rendered make no sense when considered along with the charges to which he was not found guilty[,] asserting that the facts simply cannot support such findings logically or legally. However, inconsistent verdicts are permissible. **Commonwealth v. Banks** 253 A.3d 768[, 775] (Pa. Super. 2021)[.] Inconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal. **Commonwealth v. Petteway**[,] 847 A.2d 713, 718 (Pa. Super. 2004)[.] Consistency in verdicts in criminal cases is not necessary. When an acquittal on one count in an indictment is inconsistent with a conviction on a second count, the court looks upon the acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity. [**Id.**] The Superior Court will not disturb guilty verdicts on the basis of apparent inconsistencies as long as there is evidence to support the verdict. **Commonwealth v. Knox**, 219 [A.3]d 186, 197 (Pa. Super. 2019). The rule that inconsistent verdicts do not constitute reversible error applies even where the acquitted offense is a lesser included offense of the charge for which a defendant is found guilty. **Banks**[, 253 A.3d] at 775. Acquittals are immaterial to the conviction where there was sufficient evidence to sustain a conviction on that charge. **Knox**[, 219 A.3d] at 197. The rationale for allowing inconsistent verdicts is that it is the jury's sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment. **Commonwealth v Kearns**[,] 907 A.2d 649, 659 n.10 (Pa. Super. 2006). There is no merit to this issue.

TCO at 9.

We agree with the trial court. Inconsistency in the jury's verdict does not demonstrate that Appellant's convictions are against the weight of the

evidence. Thus, the court did not abuse its discretion in denying Appellant's challenge to the weight of the evidence.[3]

Judgment of sentence affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>07/24/2025</u>

_____

[3] We note that Appellant also claims "there was clearly no obstruction when[,] in fact[,] witnesses appeared and did testify for trial." Appellant's Brief at 16. Appellant's single-sentence argument — which is actually a sufficiency claim — is waived, as it was not raised in his Rule 1925(b) statement. **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); Pa.R.A.P 1925(b) Order, 6/3/24, at 1 (warning that the "[f]ailure to comply with this [o]rder may be considered a waiver of all objections") (unnumbered page); **see also Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.**, 88 A.3d 222, 225 (Pa. Super. 2014) (*en banc*) ("[I]n determining whether an appellant has waived his issues on appeal based on non-compliance with [Rule] 1925, it is the trial court's order that triggers an appellant's obligation[. T]herefore, we look first to the language of that order.") (citations omitted; some brackets added).